Burks, J.,
delivered the opinion of the court.
This is the second time this case has been before this court on a writ of error allowed the defendant. On a new trial had, as ordered, after the cause had been remanded, the defendant excepted to rulings of the court, which are the basis of two assignments of error. The first is the refusal of the^court to give to the jury instruction No. 2 in the form as prayed and the giving of that instruction with an addition made by the court. The second is the refusal of the court, on the motion of the defendant, to set aside the verdict of the jury and grant him a new trial, on the ground that the verdict was contrary to the evidence.
1. In the instruction asked the court determines as matter of law the question of negligence on certain facts hypothetically stated, while the instruction given leaves the question as one of fact to be decided by the jury. That is the only essential difference in the two instructions; and we are of opinion that the circuit court did not err in its ruling on this point. Indeed, the question now made was virtually settled by this court when the case was here before in disposing of the defendant’s third bill of exceptions taken to the refusal of the court to give the instruction set out in that bill.
That instruction was in these words: “If the jury believe from the evidence that the intestate of the plaintiff, B. F. Ficklin, received from the defendant the ten bonds in the declaration mentioned, under an agreement that he would act as agent of the defendant in their sale; that the said B. F. Ficklin failed to sell said bonds, and that such failure was caused by the gross ■ negligence of the said Ficklin in attention to his agency, that then the said Ficklin was responsible to the defendant for the actual loss *675 occasioned by his failure"to sell said bonds, and the jury J should allow the amount of such actual loss as an offset in this case.”
This court was of opinion, and so declared, that this instruction was faulty in assuming that there was evidence of an agreement of Ficklin to act as agent of the defendant in the sale of the bonds, whereas the agency extended no further than to the taking of the bonds to England for sale, and when they were deposited with De La Rue for sale and the defendant was informed of that fact, Field in’s agency ceased. And the judge, who delivered the opinion concurred in by the court, expressed himself thus: “It was a fair subject of enquiry for the jury, as to how far Ficklin, under the circumstances, may have been guilty of negligence in failing to make enquiry as to the salableness of the bonds at the time they were deposited with De La Rue, and to give seasonable information thereof to the defendant; and if the instruction had been limited to negligence in this respect, I think it might properly have been given.”
Now, this language seems to us too plain to admit of misapprehension. The instruction was based on the assumption of evidence not furnished by the record, that Ficklin was agent to sell the bonds. That was the defect. It should have been limited to the agency to take the bonds abroad and deposit them for sale, and advise the defendant of such deposit, and the enquiry as to negligence should have been confined to that agency; and that is what was said substantially in the opinion. The instruction expressly referred the question of negligence to the jury. We did not say, that was error. On the contrary, it was in effect affirmed, that the jury was the proper tribunal to decide that question, only that the enquiry as to negligence should be confined to the subject matter of the agency limited as before stated. The rulings of the circuit court, therefore, set out in the first bill of exceptions, and now *676 the subject of complaint here, were not erroneous, but in conformity to the principles already recognized in the cause by this court.
Notwithstanding some contrariety of decision, it cannot be doubted that the question of negligence, as a general rule, is a question of fact and not of law. There are exceptions, but the case must be a very clear one, says Mr. Chief Justice Cooley, in a well considered opinion, which would justify the court in taking upon itself the responsibility of determining the question as one of law; for when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff’s conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would ¡be generally regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence •were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge ■of the common opinion, he might find them differing with him as to the ordinary standard of care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Detroit & Milwaukie R. R. Co. v. Van Steinburg, 17 Mich. R. 99, 120.
It is a mistake to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law. This is generally true only of that ■class of cases where a party has failed in the performance •of a clear legal duty. When the question arises upon a .•state of facts on which reasonable men may fairly arrive at •different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inferences to be drawn from *677 the evidence must either be certain and incontrovertible, or they cannot be decided by the court. Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ. Idem, p. 123. To the same effect is R. R. Co. v. Stout, 17 Wall. U. S. R. 657.
In West Chester & Philadelphia R. R. Co. v. McElwee, 67 Penn. St. R. 311, 315 (decided in 1871), it is said, that negligence is always a question for the jury when the measure of duty is ordinary and reasonable care. In such cases, the standard of duty is not fixed, but variable. Under some circumstances a higher degree of care is demanded than under others. And when the standard shifts with the circumstances of the case, it is in its very nature incapable of being determined as matter of law, and must be submitted to the jury to determine what it is, and whether it has been complied with. See also Barron & others v. Eldridge '& others, 100 Mass. R. 455, 459; Sher. & Redf. on Negligence, § 11.
The present is a case of a gratuitous bailee, who caD be held liable for gross negiligence only. In such a case, whether the proper degree of care has been observed is one of fact, not of law. Cooley on Torts, 632, and cases cited.
In Doorman v. Jenkins, 2 Ad. & El. 256, (29 E. C. L. R. 80), the liability of the defendant depended on the question whether he had been guilty of gross negligence, and it was decided that it was properly left to the jury to determine. The only question before us is, said Williams, J., whether the judge should have said that the case was not made out on the part of the plaintiff, or should have left it to the j ury. If the j udge be obliged to lay down a rule, it is extremely difficult to discover what that rule ought tobe. Who can say where “gross negligence” begins? Can it be any other than a question of fact ? The case was properly left to the jury. What was said by the *678 other judges was to the like effect. How much care will, in a given case, relieve a party from the imputation of -gross negligence, ór what omission will amount to the charge, is necessarily a question of fact, depending upon a great variety of circumstances, which the law cannot exactly define. Stover v. Gowan, 18 Maine R. 174, 177. The question of gross negligence was left to the jury by Mr. Justice Story in Tracy & others v. Wood, 3 Mason’s R. 132.
2. Did the circuit court err in overruling the defendant’s motion for a new trial based solely on the ground that the verdict was contrary to the evidence?
The defence to the plaintiff’s action was two-fold. First, equitable estoppel. Second, negligence: on both of which grounds it was- contended, that the loss of the bonds was attributable to the conduct of the plaintiff’s intestate, and that the defendant was entitled to set off their value against the plaintiff’s demand.
The first branch of the defence is presented by the instruction given to the jury, on the defendant’s motion, without objection from the plaintiff, that if the jur^ should believe from the evidence “that information was communicated by B. F. Ficklin personally or through L. 'R. Smoot to the defendant before the termination of the war, or before the Confederate States bonds became valueless, that said bonds delivered to said Ficklin had been sold,, and that by reason thereof the defendant was’induced not to prosecute his rights in relation to said bonds, and thus the bonds were lost to him, the defendant is entitled to set off the value of the bonds as of the date of said representation, or a reasonable time thereafter, against the plaintiff’s demand.”
It was proved by the testimony of Smoot and Lathrop, that the information referred to in the instruction was given. It seems, that at or about the time when Ficklin left the defendant’s bonds with De La Rue, Smoot, who *679 was also then in England, deposited' some Confederate coupon bonds of his own with the same De La Rue, with directions to sell them and place the proceeds to lin’s credit. After FickJin’s return to Virginia in 1864, having been informed by De La Rue of credits to his account growing out of the sale of Confederate bonds, and having forgotten the deposit of the coupon bonds made by Smoot, and supposing, therefore, that the credits referred to by De La Rue arose from the sale of the defendant’s registered bonds, which had been deposited as aforesaid, he told the defendant that his bonds had been sold. But notwithstanding this statement to the defendant, founded, as shown, on a mistake of fact, there would seem to be nothing in the record warranting the conclusion that the statement induced the defendant to do or omit to do anything in reference to the bonds, which operated to his prejudice. If it were otherwise, it was incumbent on him to show it. On the contrary, it may be inferred, that the information as to the supposed sale had no influence on his conduct; for, on the 15th of March, 1864, when the loan was made, both he and Ficklin must have thought that the bonds had probably been sold, though Ficklin had not been advised whether anything had been done with them or not, and it was after this that .Ficklin stated to the defendant that the sale had been made. But even if the defendant had been informed that no sale had been made, and he had desired to have his bonds returned to him in Virginia where they could be available, it is not probable that he could have effected that object while the blockade existed and was being enforced.
The alleged negligence of the plaintiff’s intestate, which is the second ground of defence, remains to be considered.
The care and diligence required of Ficklin in the business entrusted to him were such as the law imposes on a bailee without compensation, and he was therefore liable, if at all, only for gross negligence. He undertook, at the *680 re(lues*' the defendant and for his accommodation merely, to take the bonds to England for sale. He did not under-to make the sale. He deposited them, according to usage, with a responsible banker or broker in London, and informed the defendant of that fact; and there his agency terminated. When the bonds were presented to Ficklin they were in the form of coupon bonds. He objected to taking bonds of that description, assigning as a reason that should he be captured while running the blockade,' he would have to destroy them. He, therefore, suggested that they should be exchanged for or converted into registered bonds, as in case of loss or destruction there would, necessarily, be great difficulty and delay in obtaining duplicates of coupon bonds, while there would be little or none in getting a renewal of registered bonds. They were therefore converted into registered bonds, payable to Ficklin.
The complaint is, that registered bonds were not salable in England, -while coupon bonds were; and although tliis fact may not have been known to Ficklin when he suggested the conversion, he ought to have enquired into the-matter when he reached England; and upon ascertaining that the bonds could not be sold, he should have brought them back with him and redelivered them to the defendant, or if he left them with the broker, he should have informed the defendant of that fact, and also that they -were not salable.
If it be conceded that such enquiry was a duty which the law, under the circumstances, imposed upon a gratuitous bailee, we think the fair inference is that the enquiry was made, though it is not expressly proved. Ficklin was in England several months, and before the bonds were placed in the hands of De La Hue with the view of rendering them negotiable, they were assigned by Ficklin, by written endorsement, to payee in blank, and the assignments were executed in the presence of a commercial agent of the Oon *681 federate States at London. There can be no reasonable doubt that Ficklin had information that the bonds so endorsed could and would be sold. Otherwise, he would not have delivered them, nor would De La Rue have taken them for sale. That Ficklin probably had this information and regarded it as reliable, is shown by the fact that after his return to this country, he, on the 15th of March, 1864, made the loan to the defendant, to be reimbursed out of the sales of the bonds, and when afterwards he was advised by De La Rue of credits to his account, he supposed they arose from those sales.
But his subsequent declarations and conduct are relied upon by the learned counsel for the plaintiff in error, as in the nature of admissions of his neglect and of his liability for the consequent loss.
After Ficklin’s return from England in 1865, in a conversation with Smoot, which had reference to the bonds and the information he had given to the defendant as to the supposed sale, he remarked that he would not make any demand or claim of the defendant for anything on account of the bonds, nor would he ever let him know that the bonds were not sold. It was said of this statement, in the opinion delivered when the case was here before, that “it is susceptible of several interpretations. It might be construed as a declaration of a purpose on his (Ficklin’s) part, from motives of kindness and friendship or sympathy with the defendant in his loss, to waive or at least not to assert his legal rights against “the defendant touching the loan made to him, or it might, in the light of the attending circumstances, be construed as an implied admission that by culpable conduct he had lost his rights, and that he was conscious of that fact.” Either of these inferences might be drawn, and there being room for doubt as to w’hich was the more reasonable, it was for the jury to decide, upon a view of all the facts and circumstances of the case.
*682 Another circumstance relied on by the counsel for the 4 4 4 4 4 plaintiff in error is the offer of Ficklin in 1869, when he in need of money, to accept from the defendant $1,000 jn satisfaction of all demands,
In the troublous times of 1865, Ficklin had lent $500 ,n c°in to the defendant’s wife. The defendant was indebted for the amount of that loan with interest. When the proposition was made by Ficklin to accept $1,000 in full discharge of all demands, the principal, interest, and premium on that loan were several hundred dollars less than the sum proposed to be taken. The most that can be made of this offer is, that it was a proposition to adjust and settle accounts, which was declined by the defendant for the want of ready means. It could not be reasonably construed as an admission that nothing more was really owing, and we decided, when the case was here before, that it was not evidence of a release or discharge.
A further circumstance relied on is, that Ficklin kept the bonds until he died in 1871, and never offered to surrender them, thus treating them, as alleged, as his own. One answer to this argument is, that the bonds were perfectly valueless, and therefore there was no necessity of returning them. The further answer is, that while he kept the bonds, he also preserved the bill of exchange and receipt for the loan, which were the evidences of hjs claim.
Looking at the whole case, it is clear that it is not one in which this^court can reverse the judgment complained of on the sole ground that the yerdict of the jury was contrary to the evidence. To warrant such reversal, it must appear by the record that the verdict was a manifest deviation from the evidence—that the evidence was plainly insufficient to warrant it. This rule, established by this court at an early day, has been reaffirmed over and over again, and is so well settled that it cannot be necessary to cite adjudged cases in support of it. It is peculiarly applicable *683 where, as in this case, there have been two verdicts the same way in two successive trials, and each has been approved by the presiding judge.
The judgment of the circuit court, therefore, must be affirmed.
Judgment affirmed.