Staunton.

KIMBALL & FINK, RECEIVERS, V. FRIEND'S ADM'R.

SEPTEMBER 16, 1897.

1. INSTRUCTIONS—*Evidence to Support—Estoppel.*—An instruction which correctly propounds the law should be given if there is evidence tending to prove the facts upon which the instruction is based. In the case at bar the defendants are estopped from denying the existence of such evidence by asking an instruction predicated on its existence.

2. NEGLIGENCE—*Burden of Proof of Contributory Negligence.*—In an action to recover damages for a personal injury inflicted by colliding with a moving train, after the negligence of the defendant has been established, the burden of proving contributory negligence on the part of the plaintiff is on the defendant, unless it is disclosed by the plaintiff's evidence, or can be fairly inferred from all the circumstances of the case.

3. RAILROAD CROSSING—*Duty of Traveller—Contributory Negligence.*—A passenger about to cross a railroad at a public crossing is bound to use ordinary care to avoid getting into a position in which a collision with a moving train is inevitable. But the fact that he did get into such a position is not conclusive evidence of contributory negligence on his part. The presumption, though slight, is that he did his duty in approaching the track. Whether he used due care or not is a question for the jury, to be determined from all the facts of the case.

4. RAILROAD CROSSING—*Gates—Gongs—Duty of Traveller—Case at Bar.*— The erection of gates, gongs, or other devices at highway or street crossings to warn travellers of approaching trains does not excuse the traveller at such crossing from using ordinary care and caution to avoid a collision. While it is the duty of the railroad company to close the gates, or ring the gong, on the approach of a train, the traveller must not rely entirely on its servants to do so. But the same degree of care is not required of him as would be if such devices were not in use. In the case at bar the plaintiff's evidence

shows or tends to show that her intestate was riding a bicycle at the rate of about eight miles an hour; that he did not stop, but there is an absence of proof as to whether he looked or listened; that the approach to the track along the street on which he was riding was through a cut ten or fifteen feet deep, and the view of the track in either direction is obstructed until within a few feet of the track; that the gong at the crossing did not ring, nor was any whistle blown, bell rung, or other warning given of the approach of the train with which her intestate collided. Considering this evidence as on a demurrer thereto by the defendant, this court cannot reverse the judgment in favor of the plaintiff.

5. TRIALS—*View of Grounds by Jury—Object of.*—The view of the grounds at the scene of an accident, which is the basis of an action, may better enable the jury to apply the testimony disclosed upon the trial, but does not authorize them to base their verdict on such view, nor to become silent witnesses to facts which were not testified to in court.

6. VERDICTS—*When Not Set Aside.*—The court will not set aside the verdict of a jury unless the evidence is plainly insufficient to sustain it. The mere fact that the court doubts the correctness of the verdict, or if on the jury, would have rendered a different verdict, is not sufficient.

Argued at Wytheville. Decided at Staunton.

Error to a judgment of the Hustings Court of the city of Roanoke, rendered March 22, 1897, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Affirmed.*

The evidence sufficiently appears in the opinion of the court. After the evidence was concluded, the court, on motion of the plaintiff, instructed the jury as follows, to wit:

*Plaintiff's Instruction No. 1.*

"The jury are instructed that the general rule that a person in passing over a railroad track at a public crossing must use his senses as to sight is subject to the following exception: That

where the view of the track is obstructed, and hence where the injured party, not being able to see, is obliged to act upon his judgment at the time; in other words, where compliance with the rule is impracticable or unavailing."

### *Plaintiff's Instruction No. 2.*

"The court instructs the jury that a railroad company running and operating its trains on the streets of a city must use greater care and diligence to prevent injuries to persons and property than is required of them in running and operating their trains in less frequented and populous localities; and so in certain localities in the town greater precautions may be necessary than in others; for example, if the train is being carried around a corner, objects or persons on the other side of which are hidden from view, it is required of them to resort to special precautions, depending upon the particular locality and the circumstances to avoid accidents, and any neglect of such precautions as are proper under the peculiar surroundings and circumstances of the locality, constitutes negligence, for which the railroad company is liable in damages, unless the plaintiff's intestate, by the exercise of ordinary care on his part, could have prevented the accident; and courts do not hold a person who is faced with a sudden danger to the same degree of judgment and presence of mind as would otherwise be required of him, and the burden of proof is on the railroad company to prove such absence of ordinary care on the part of the plaintiff's intestate."

### *Plaintiff's Instruction No. 3.*

"The court instructs the jury that, although the plaintiff's intestate may have been guilty of negligence, and although that negligence may in fact have contributed to the accident, yet, if the defendant could in the result, by the exercise of ordinary care and diligence, have avoided the accident which happened,

the plaintiff's intestate's negligence will not excuse them, and the plaintiff is entitled to recover."

### *Plaintiff's Instruction No. 4.*

"The jury are instructed that if they believe from the evidence that the defendants, at the crossing, where the accident occurred, have suffered to remain on their land high embankments on the side of the road or street, so as to exclude to a traveller a view of their track when about to go upon said track, the traveller is excused from looking, and the failure to look cannot be imputed to him as negligence, but it throws upon him additional care in listening, and to take such other precautions for his safety as may be reasonably necessary."

### *Plaintiff's Instruction No. 5.*

"If the jury believe from the evidence that Josiah Friend approached the crossing where he met his death as an ordinarily prudent man would do, travelling, as he was, on a bicycle, and that the electric gong did not sound to warn him of the approaching engine, when he was about to cross, and that if said electric gong had sounded, it would have warned him of the approaching engine in time to escape, and that no other sufficient warning of the approaching engine was given, and that the embankments were such as to prevent his seeing the engine in time to escape, and he lost his life thereby, and that he listened for the approach of the train, and failed to hear, they must find for the plaintiff."

### *Plaintiff's Instruction No. 6.*

"If the jury believe from the evidence that the approach to the crossing where Josiah Friend was killed was extra dangerous, then it was the duty of the defendant to use extra care to prevent accidents to travellers, and to use reasonable precau-

tions to warn and protect travellers against approaching trains. The degree of care required of the defendants, as well as plaintiff, being measured by the dangerous character of the crossing. And as to whether such reasonable precautions were used or adopted by defendants, is a question for the jury to determine."

### *Plaintiff's Instruction No. 7.*

"If the jury believe from the evidence, and from a view of the place where the accident is alleged to have taken place, that the view of an approaching train was obstructed by an embankment or otherwise, and that ordinary care would have required other precautions than those employed, and that the defendants did not use such other precautions, then they must conclude that the defendants were guilty of negligence; and if they believe further from the evidence that Josiah Friend did not know that the engine was nearing the crossing so as to endanger his passing over it, but acted as an ordinarily prudent man would act under the circumstances, they must find for the plaintiff such damages as are proper, not exceeding the amount claimed in the declaration.   This instruction is to be read in connection with No. 8."

### *Plaintiff's Instruction No. 8.*

"If the jury believe from the evidence the plaintiff is entitled to recover, in ascertaining her damages, the jury should find the sum with reference:

"First. To the pecuniary loss of Mrs. Marian Friend, by the death of her husband, Josiah Friend, fixing the same at such sum as would be equal to the probable earnings of the said Josiah Friend, taking into consideration the age, business capacity, experience, habits, energy, and perseverance of the deceased, during what would probably have been his life-time, and the life-time of said Marian Friend, if he had not been killed.

"Second. In ascertaining the probability of life, the jury have the right to determine the same with reference to recognized scientific tables, relating to the expectation of human life.

"Third. By adding thereto compensation for the loss of his care, attention, and society to his wife.

"Fourth. By adding such sum as they may deem fair and just by way of solace and comfort to his said wife for the sorrow, suffering, and mental anguish occasioned by his death."

### *Plaintiff's Instruction No. 9.*

"The court instructs the jury that where a railway company maintains an electric gong at its crossing as a precaution to protect persons crossing, the traveller is not bound to exercise so high a degree of care as he would be, except for such precautions on the part of the company, still he is, nevertheless, bound to use his senses and do all which a prudent man, under the circumstances, would do to avoid the danger."

The court refused to give the instructions tendered by the defendant, and, in lieu thereof, instructed the jury as follows:

### *Defendants' Instruction No. 1.*

"The court instructs the jury that if they believe from the evidence that the said engine approached said crossing without blowing a whistle for said crossing, or ringing its bell, and if the gong at said crossing failed to ring, and that such conduct was negligence on the part of the railroad company, and further believe that the said Friend came out of the cut, toward the crossing, at a fast rate of speed on a bicycle, that he did not look or listen, and that the said bicycle and the said locomotive came into a collision at said crossing, that the said Friend was guilty of such contributory negligence as to prevent recovery, and a verdict must be found for the defendant receivers, unless after, the defendants saw, or could, by the use of ordinary care, have

seen, his peril, they could afterward, by the use of ordinary care, have prevented the accident.

"To be read in connection with No. 1."

### *Defendants' Instruction No. 2.*

"The court instructs the jury that a traveller approaching a railroad crossing must look and listen; that it is not sufficient to look in one direction, but that he is under the duty to look in directions from which engines and cars may approach, and that it is his duty to exercise care, and must exercise a higher degree of care where the crossing is dangerous, than where it is not, and that if they believe from the evidence that the plaintiff's intestate in this case could have seen the engine, with which he collided, approaching by looking, and so have avoided the collision, the presumption is that he did not look, or, if he did look, did not heed what he saw, and the burden of proof in such case is upon the plaintiff to show that he did so look and listen; and if the jury believe from the evidence that he omitted to look and listen, they must find a verdict for the defendant receivers, unless they further believe that, after perceiving the negligence of the plaintiff's intestate, they could have avoided the effect of such negligence by the exercise of ordinary care."

### *Defendants' Instruction No. 3.*

"The court instructs the jury that, while it is the duty of the defendant receivers to give notice of the approach of its trains to a crossing, by the ringing of its bell, the blowing of the whistle, or otherwise, and that its failure to give such notice is negligence; that there are, also, reciprocal duties imposed on the plaintiff's intestate; that a traveller cannot go upon the track, even at a public crossing, without exercising ordinary care and caution; that the track itself is a proclamation of danger, and that it is the duty of any one going upon it to use his eyes and

ears; he should both look in either direction from which the train could come, and listen, to ascertain if it is approaching, and if his faculties warn him of the near approach of a train, it is his duty to keep off the track, and that if a traveller fails to so look and listen, as duty requires of him, and attempts to cross the track in front of a moving train, and is caught before he can get across, and is killed, his own act and his own negligence so contributed to the injury that a recovery therefor cannot be sustained, and the jury must find for the defendants.

"This instruction to be read in connection with No. 1."

### Defendants' Instruction No. 4.

"The court instructs the jury that if they believe from the evidence that the engine of the defendant receivers approached the crossing described in the declaration at a slow rate of speed, after having blown its whistle for said crossing, in a proper manner, with its bell ringing, and the gong having rung until the engine was within a few feet of the crossing, and that they could not have prevented the accident after they discovered the danger of the plaintiff's intestate, Friend, that the railroad company having a right to occupy its own track with its engines for the proper conduct of its business was within those rights, and is not guilty of negligence, and the jury must find for the defendant receivers."

### Defendants' Instruction No. 5.

"The court instructs the jury that it is the duty of a traveller approaching a crossing on grade over a railroad track to look and listen, and for this purpose it is his duty to stop before crossing the track, if the circumstances are such as to make it necessary to stop in order to properly look and listen, and if the jury believe from the evidence that the plaintiff's intestate was killed by the engine of defendant receivers while attempting to cross the track

of said company, and that at the time he was so killed he was riding upon a bicycle, and that he approached the crossing over said tracks through a cut which obstructs the view of the track until the plaintiff got within a reasonably short distance of the track, and that the plaintiff could not, without stopping his bicycle before reaching the crossing, look carefully up and down the track, and if they believe from the evidence that the plaintiff's intestate did not stop when in view of the track and listen and look in both directions, then the jury are instructed that he was guilty of contributory negligence, and cannot recover in this action, though the jury may believe that the defendant may have, also, been guilty of negligence."

There was a verdict for the plaintiff for $8,900. The defendants moved the court to set aside the verdict and award a new trial, but the court overruled the motion, and entered judgment for the plaintiff, and thereupon the defendants applied for a writ of error, which was awarded.

*Watts, Robertson & Robertson*, for the plaintiffs in error.

*Hansbrough & Hall* and *H. St. George Tucker*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a writ of error to a judgment against the receivers of the Norfolk and Western Railroad Company, rendered in an action to recover damages for the negligent killing of the plaintiff's intestate.

The grounds relied on for a reversal of the judgment are that the jury were misdirected, and that their verdict is contrary to the law and the evidence.

The defendants moved the court to give five instructions, all of which were refused, and five others, given in lieu thereof by

the court. This action of the court was excepted to, but it is admitted in the petition for the writ of error that the substituted instructions were substantially the same as those asked for by the defendants, and that they were not prejudiced thereby.

The court gave nine instructions upon the motion of the plain‑tiff, all of which were objected to.

The objection made to the first instruction is that there was no evidence upon which to base it. There was evidence tending to show that the view of the railroad track on either side of the crossing was obstructed by the sides of the cut to a point within a few feet of the track. One witness stated that the mouth or end of the cut was within two yards of the railroad. Another witness, who seems to have made his measurement in the presence of the jury testified that at the south side of the cut the distance from the centre of the railroad track to the "high ground" on the side of the cut was only twelve feet. This evidence tended to show that the view of the railroad track on either side of the crossing was practically shut off by the sides of the cut to a traveller coming from the west until he got to the crossing. An instruction, therefore, which informed the jury that a traveller was not required to look where he could not see was proper, but to prevent any misconception by the jury on the subject of his duty, in approaching a railroad crossing, the court directed the jury expressly to consider with this instruction, instructions Nos. 1 and 3, given by the court for the defendants.

By the instruction called "Defendants' Instruction No. 1" the jury were told that "if they believe from the evidence that the said engine approached said crossing without blowing a whistle for said crossing, or ringing its bell, and if the gong at the said crossing failed to ring, and that such conduct was negli‑gence on the part of the railroad company, and further believe that the said Friend came out of the cut toward the crossing, at a fast rate of speed on a bicycle, that he did not look nor listen, and that the said bicycle and the said locomotive came into a collision at said crossing, that the said Friend was guilty of such

contributory negligence as to prevent recovery, and a verdict must be found for the defendant receivers, unless after the defendants saw, or could, by the use of ordinary care, have seen, his peril, they could afterward, by the use of ordinary care, have prevented the accident.".

By the instruction called "Defendants' Instruction No. 3" they were told that "while it is the duty of the defendant receivers to give notice of the approach of its trains to a crossing, by the ringing of its bell, the blowing of the whistle, or otherwise, and that its failure to give such notice is negligence, that there are, also, reciprocal duties imposed on the plaintiff's intestate; that a traveller cannot go upon the track even at a public crossing, without exercising ordinary care and caution; that the track itself is a proclamation of danger, and that it is the duty of any one going upon it to use his eyes and ears; he should both look in either direction from which the train could come, and listen, to ascertain if it is approaching, and if his faculties warn him of the near approach of a train, it is his duty to keep off the track, and that if a traveller fails to so look and listen, as duty requires of him, and attempts to cross the track in front of a moving train, and is caught before he can get across and is killed, his own act and his own negligence so contributed to the injury that a recovery therefor cannot be sustained, and the jury must find for the defendant."

By the third instruction given for the plaintiff the jury were instructed that if the defendants could in the result, by the exercise of ordinary care and diligence, have avoided the accident, the negligence of the plaintiff's intestate would not excuse the railroad company. This instruction is objected to on the ground that there was no evidence tending to show that the accident could have been avoided after the peril of the deceased was discovered.

There is some evidence tending to show that the engineer in charge of the engine expected when he reached the crossing to stop there for the purpose of taking on hands to carry them

out to their place of work, and that the engine was being run with this view until it came very near the crossing. The contention of the plaintiff is that if those in charge of the engine, running as it was, had exercised ordinary care after they saw, or might have seen, the peril of the deceased, the accident might have been avoided.

Not only did the plaintiff and the court think that there was evidence tending to prove the facts upon which that instruction was based, but the defendants admitted (and are now estopped from denying) that there was such evidence by asking the court in their fourth instruction to tell the jury that if they believed certain facts they must find for the defendants, "unless they further believe that after perceiving the negligence of the plaintiff's intestate, they could have avoided the effect of such negligence by the exercise of ordinary care."

Without discussing specially the objections made to other instructions, it is sufficient to say that in our opinion the case was submitted to the jury upon instructions eminently favorable to the defendants, and we do not think that they have any just ground of complaint to them as a whole.

The next question is: Was the verdict of the jury contrary to the evidence?

There is evidence tending to show that the deceased was about forty-five years of age, a resident of Roanoke city, and employed as a workman at the Bridge Works in the eastern part of the city, where he had been engaged for about two weeks. In going to and from his work he usually travelled on a bicycle, and crossed the Shenandoah Branch of the Norfolk and Western railroad at what is known as the Bridge-Works crossing, which is in the city, and much travelled. The approach to this crossing for a distance of three hundred feet immediately west of it, is over a narrow dirt road or street about fifteen feet wide, running through a cut whose sides are from ten to fifteen feet high, and which extend to within a few feet of the railroad track, rendering the crossing to travellers from the west very dan-

gerous.  On account of its dangerous character the railroad company some years before had erected immediately east of the crossing, on the north side of the highway, an electric gong or bell to warn travellers of approaching trains.  This gong or bell is connected with the railroad track in some way (not clearly shown), so that when trains or engines are approaching from either direction it commences to sound or ring at a distance of about three hundred yards from the crossing.  That the deceased approached the crossing on the morning of the accident through the narrow cut upon his bicycle, going about as fast as an ordinary horse trots; that as he reached the crossing he was struck by an engine of the defendants, without cars, running at about eight miles an hour, and carried upon its pilot from twenty to forty feet, thrown from it and killed; that his bicycle, which was without brakes, was made by himself, and that he was not a very expert rider; that the railroad track, in the direction from which the engine came, could be seen from the centre of the highway a distance of twenty-one feet when within twenty-five feet of the west rail, fifty-five feet when ten feet nearer, and seven hundred feet (six hundred and fifty of which was beyond the curve in the track), when within nine and a half feet of the rail; that the sides of the cut extended down very close to the railroad track; that no notice was given of the approaching train either by sounding the gong, ringing the bell, blowing the whistle, or otherwise; that two other travellers walking in the same direction toward the crossing, and within fifteen or twenty feet of it when the deceased was struck, did not hear the approach of the engine until, in the language of one of them, "it jumped out and struck the man"; that the railroad track in the direction from which the engine came is visible at several points from the avenue over which the deceased travelled before he reached the narrow cut which leads to the crossing.  The evidence shows that he did not stop as he approached the crossing, but no witness testifies as to whether he did or did not look or listen for approaching trains.

The record, considered as on a demurrer to the evidence, shows, and the verdict of the jury establishes the fact, that the defendants negligently and improperly failed to give the deceased warning of the approaching engine, and that this negligence caused the accident. It is insisted, however, that although the defendants were guilty of negligence, the deceased was guilty of contributory negligence, and the plaintiff is, therefore, not entitled to recover.

The burden of showing that the deceased was not in the exercise of ordinary care and caution in approaching the crossing was upon the defendants, unless it was disclosed by the plaintiff's evidence, or can be fairly inferred from all the circumstances of the case. *Balto. & Ohio R. Co.* v. *Whittington,* 30 Gratt. 805; *Improvement Co.* v. *Andrew,* 86 Va. 273; *N. & W. R. Co.* v. *Gilman,* 88 Va. 239.

It is argued that, as the deceased knew he was approaching a railroad crossing, it was his duty to keep a lookout for trains, and to proceed in such manner that he could avoid a collision if a train appeared; that he had no right to go so near the track that he could not stop before reaching it, until he had satisfied himself that there was no danger.

It is true that he was bound to use reasonable care to avoid getting into a position in which he could not escape a collision. But the fact that he did get into such position is not conclusive evidence that he was there by his own negligence. He may have been there in consequence of the defendants' negligence, and because he was misled by it. Whether he used due care to ascertain if a train was approaching depended upon inferences from facts to be found by the jury. The manner in which he approached the track; the speed at which he was travelling; the obstructions to a view of the track on which the engine was approaching; the negligence of the defendants, as it affected the conduct of the deceased, whether that negligence consisted in the silence of the electric gong, the failure to ring the bell, sound the whistle, or give any warning of its approach, or in all com-

bined, were among the facts to be found by the jury, and from which facts in connection with all the other circumstances and facts of the case the main fact of due care or negligence on the part of the deceased was to be found. Upon all these facts and circumstances, after view of the grounds, the jury were of opinion that it did not appear that the deceased was guilty of contributory negligence.

It is insisted that this case is controlled by the case of *Washington, &c., R. Co.* v. *Lacey*, 94 Va. 460, and that, under the doctrine laid down in that case, the plaintiff was guilty of contributory negligence. The doctrine laid down in that case, that a traveller, before going upon a railroad crossing, must look and listen for approaching trains, except under very special circumstances, is well settled. *Johnson* v. *Chesapeake & O. R. Co.*, 91 Va. 171; *Lacey Case, supra; Ayers* v. *Norfolk & Western R. Co.*, decided at Wytheville, June term, 1897.

The case under consideration and the *Lacey Case* are not alike in their facts. In that case it appeared from the testimony of the plaintiff himself that if he had looked and listened as he approached the crossing he could have seen the train by which he was injured, and that he did not look and listen, where it was his duty to do so. In that case there was no electric gong or other device at the crossing by which the plaintiff was or could have been misled.

In this case no witness testified that the deceased did not look or listen. Whether he did or not was a question to be determined by the jury from all the facts in the case. Where a traveller is killed at a railroad crossing, and the negligence of the railroad company is established, in the absence of evidence to the contrary, the presumption is, though, perhaps slight, that the traveller did his duty in approaching the crossing. *Railroad* v. *Gladman*, 15 Wall. 401, 406-7; *Oldfield* v. *New York & Harlem R. Co.*, 14 N. Y. 310; *Roberts* v. *Pres. & Managers of Delaware & Hudson Canal, &c.*, 177 Penn. St. 183; *Balt. and Ohio R. Co.* v. *Griffith*, 159 U. S. 603, 611, 612. If this were not so

the plaintiff would in all such cases have to allege and prove not only the negligence of the railroad company, but his own free-dom from contributory negligence. With us this is not the rule, though it is in some jurisdictions.

In this case the jury had the right to infer that the deceased had placed some reliance upon the fact that the electric gong failed to sound as the engine approached the crossing, and was thereby misled.

The erection of gates, gongs, or other devices at highway or street crossings to warn travellers of approaching trains does not excuse a traveller at such crossings from exercising ordinary care and caution. And while courts and text-writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveller to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him, as if there was no such invitation. 3 Elliott on Railroads, sec. 1157; 2 Wood on Rail-ways, p. 1328 (Ed. 1885); p. 1532 (Ed. 1894); *Directors, &c., North East Railway* v. *Wanless*, 7 Eng. & Irish Appeal Cases (House of Lords), 12; *Palmer* v. *N. Y. Central R. Co.*, 116 N. Y. 234, 241; *Tobias* v. *Michigan Cent. R. Co.* (Mich.), 61 N. W. 514; *Glushing* v *Sharp*, 96 N. Y. 676; *Cleveland, &c., R. Co.* v. *Schneider* (Ohio), 17 N. E. 321; *Penn. R. Co.* v. *Steig-meier* (Ind.), 20 N. E. 843; *Conaty* v. *New York, &c., R. R. & Co.* (Mass), 42 N. E. 103; Beach on Contributory Negligence, sec. 190 (2nd Ed.).

The question of negligence in such a case is peculiarly one for the consideration of the jury.

In *Carrington* v. *Ficklin*, 32 Gratt. 670, 676-7, the court, Judge Burks delivering the opinion, said: "When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inference to be drawn from the evi-dence must be either certain and incontrovertible, or they can-

not be decided by the court. Negligence cannot be conclusively established by a state of facts upon which fair-minded men will differ."

The doctrine as laid down by Judge Burks in that case is approved in *Richmond & D. R. Co.* v. *Medley*, 75 Va. 499, 505, Judge Staples speaking for the court.

The decisions of the Supreme Court of the United States, and the cases generally, it is believed, are to the same effect.

In the case of *Grand Trunk R. Co.* v. *Ives*, 144 U. S. 417, 418, it is said: "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in the case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury." *B. & O. R. Co.* v. *Griffith*, 159 U. S. 603 and 611.

It was said in *Railroad Co.* v. *Stout*, 17 Wall. 663-4, that "certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education, and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the

mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.

"In no class of cases can this practical experience be more wisely applied than in that we are considering. We find, accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was taken, or whether they establish negligence."

Beach in his work on Contributory Negligence, section 448, says: "That contributory negligence is a matter of law is plainly the exception, and not the rule. In a perfectly plain case, plain as to facts at issue and plain as to all the reasonable inferences from those facts, the negligence of the plaintiff may be a question for the court alone, but inasmuch as questions about which there can be no dispute are not often litigated, it does not often occur that a court is warranted in taking the question wholly from the jury." See also sections 449 and 450.

"Where gates are maintained," says Elliott on Railroads, vol. 3, sec. 1157, "whether required by statute or not, the fact that the gate is open is held to be an invitation to cross, and an assurance that the track can be crossed in safety, but such invitation will not excuse the traveller himself from exercising ordinary care to avoid collision. It is the duty of the company to close the gates on the approach of a train, but the traveller himself must not rely entirely upon its servant to do so. In cases where the failure to close the gates is followed by a collision, the question of negligence and contributory negligence is usually for the jury." *Directors of Eastern Railway Co.* v. *Wanless,*

*supra; Conaty* v. *New York &c., R. Co.* (Mass.), 42 N. E. 103; *Palmer* v. *N. Y. C. & H. R. Co.*, 112 N. Y. 234; *Penn. R. Co.* v. *Steigmeier* (Ind.), 20 N. E. 843; *Chicago, &c., R. Co.* v. *Hutchinson* (Ill.), 11 N. E. 855; *C. C. C. R. Co.* v. *Schneider* (Ohio), 17 N. E. 321.

It may be that a silent gong is not as strong an assurance to the traveller that the track can be crossed in safety as an open gate, but it is a circumstance upon which he may rely, and which the jury must consider in connection with the other facts of the case in determining the question of contributory negligence. *Tobias* v. *Mich. Cent. R. Co.*, 61 N. W. 514 (Mich.).

The question whether the deceased exercised due care in approaching the crossing was, as we have seen, peculiarly within the province of the jury. They heard and saw the witnesses. They viewed the grounds where the accident occurred, and whilst that view did not authorize them to base their verdict on such examination, or to become silent witnesses as to facts which were not testified to in court, it did the better enable them to apply the testimony disclosed upon the trial. The court before whom the case was tried was satisfied with the verdict, or, at least, did not feel justified in disturbing it.

The fact that we may doubt the correctness of the verdict, or, if we had been on the jury, might have found a different verdict, will not authorize us to disturb it. In order for this court to set aside the verdict it must be satisfied that the evidence is plainly insufficient to sustain it. This is settled by a long line of decisions.

Judge Carr said, in *Brugh* v. *Shanks*, 5 Leigh 598, 599: "The jury are exclusively the triers of fact. The admissibility of evidence is with the court, but its weight is wholly for the jury. I mention this not as denying the power of the court to grant a new trial, because a verdict is against evidence, but to show how cautiously it should interfere on this ground, lest it trench upon the legitimate powers of the jury. This caution is inculcated in many cases in our books." And, after quoting

from Judge Roane, in *Ross* v. *Overton*, 3 Call. 319, that a new trial ought to be granted "only in a case of a plain deviation, and not in a doubtful one, merely because the court, if on the jury, would have given a different verdict, since that would be to assume the province of the jury, whom the law has appointed triers," adds: "These remarks are applied to the court which presides at the trial, and has all the advantages (possessed by the jury) of seeing and hearing the witnesses, how much more strongly do they apply to an appellate court, deprived of these all-important aids in eviscerating the truth."

In *Vaiden's Case*, 12 Gratt. 717, 727-8, Judge Lee, delivering the opinion of the court, said: "There can be no doubt that where the court has to pass upon the evidence in the cause, a new trial ought not to be granted, except in a case of plain deviation, or of palpable insufficiency of evidence, and not in a doubtful case merely because the court, if on the jury, would have given a different verdict." *Kates' Case*, 17 Gratt. 561-2; *Kemp's Case*, 18 Gratt. 977; *Read's Case*, 22 Gratt. 924, 941; *Blair & Hoge* v. *Wilson*, 28 Gratt. 165, 175; *R. & D. R. Co.* v. *Medley*, 75 Va. 499, 505; *Southwest Imp. Co.* v. *Smith*, 85 Va. 306, 319.

After a most careful consideration of all the facts and circumstances disclosed by the record, we are unable to say that the evidence is plainly insufficient to sustain the verdict. To do so would require us to hold that all reasonable men would necessarily reach the conclusion, upon the facts and circumstances of the case, that the plaintiff's intestate was guilty of contributory negligence. This we cannot do.

The judgment complained of must be affirmed.

KEITH, P., and CARDWELL, J., dissent.

*Affirmed.*