96　403
98　24
98　199

96　403
101　223

96　403
109　400

## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

### HOME LIFE INSURANCE CO. v. SIBERT.

SEPTEMBER 29, 1898.

Absent, Riely and Cardwell, JJ.

1. INSURANCE—*Warranties.*—Where the answers to questions propounded in an application for insurance are made warranties by the contract of insurance, it is a matter of no consequence whether they were material to the risk or not. A warranty is a stipulation upon the literal truth or fulfilment of which the validity of a contract depends. It is in the nature of a condition precedent, and must be strictly complied with, whether material or not, In the case at bar, the answers were made warranties by the contract of insurance, and were not true.

2. INSTRUCTIONS—*Errors which cannot be Assigned.*—Although an instruction given by the trial court be erroneous, the error cannot be assigned by a party who has previously, on the same trial, asked for an instruction containing the same error. A party cannot invite the court to commit error by asking for an erroneous instruction, and be permitted thereafter to have the verdict set aside for the error into which the court has been thus misled.

Error to a judgment of the Circuit Court of Shenandoah county rendered April 16, 1897, in an action of *assumpsit* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

This was an action of *assumpsit* on a policy of insurance for $1,000 on the life of Frank E. Sibert, issued by the plaintiff in error to the defendant in error. There was a verdict and judgment in favor of the defendant in error for the sum of $1,000, with interest from January 23, 1896. The main issue

between the parties was whether there had been a breach of the warranties contained in the contract of insurance. The company contended that the answers to the questions propounded in the application for the insurance were, by the terms of the policy, together with those contained in the declaration to the company's medical examiner, made warranties, and that these answers were not true, full, and complete. The evidence sufficiently appears in the opinion of the court.

After all the evidence had been introduced, the company asked for seven instructions, which the court refused to give, except with certain modifications. These instructions were as follows:

" 1. The court instructs the jury that all the answers contained in the written and printed application for insurance, and in the declarations to the medical examiner, are warranties that the said answers are true, full, and complete. And if the jury believe from the evidence that the said answers are not full, true, and complete, whether material to the risk or not, they shall find for the defendant.

" 2. The jury are instructed that by the warranties of the answers to questions, set out in the said application and declarations to medical examiner, the insured, F. E. Sibert, stipulated for the absolute truth of the answers, upon penalty of forfeiture of right to recover, should the said answers, or any one of same, prove not to be true, full, and complete; that the only question before the jury in regard to said warranties, is whether the said warranties have been kept, and if the said answers are not true, full, and complete, they shall find for the defendant.

" 3. The jury are instructed that evidence of the cause of F. E. Sibert's death, or his illness or condition, subsequent to the making of the said application, and issuance of the said policy of insurance, is not to be considered by the jury except in so far as it may show, or tend to show, whether or not the

answers contained in the said application and declarations were true, full, and complete.

" 4. The jury are further instructed by the court that the said policy of insurance, according to its terms, did not become due and payable until notice and proofs of death of F. E. Sibert were given to the said defendant, and unless the jury believe from the evidence that the notice and proofs of death were furnished to said defendant before the institution of this suit, the jury shall find for the defendant.

" 5. The jury are further instructed that the plaintiff can only recover upon the contract, evidenced by the policy of insurance, including the application and declarations to the medical examiner, made part thereof, and the conditions contained therein, and they must give effect to every provision and stipulation thereof, according to the evidence before them, and they have no right to disregard any part of same upon any opinion or theory of theirs, that it ought to have been different from what it is.

" 6. If the jury believe from the evidence that the answers and statements, or any one of same, in the said application and declarations to medical examiner, are not true, full, and complete, that the said F. E. Sibert knew at the time of making the same that they were not true, full, and complete, and that the same were material to the risk, the jury are instructed to find for the defendant.

" 7. The jury are further instructed by the court that if they believe from the evidence that F. E. Sibert, at the date of the making of said application and issuance of said policy of insurance, was not in perfect health, so far as he knew and believed, and that the said representation was material to the risk, the jury are instructed to find for the defendant."

And thereupon the court gave the following instructions :

" 1. The jury are instructed that the burden of proof is on the plaintiff to prove the death of F. E. Sibert; that the company received proof of his death, and any other prerequisite

required by the policy before payment of the insurance money, or liability upon the company, or that the same has been waived by the defendant, but the burden of proof is on the defendant to show that the policy is avoided by virtue of the failure of F. E. Sibert to answer the questions propounded to him by the medical examiner in accordance with the stipulations of his application.

" 2. The jury are further instructed that F. E. Sibert stipulated in his application, that his answers and each of them to the said several interrogatories propounded to him by the medical examiner, were full, true, and complete, and a failure on his part to make a full, complete, and true answer to any of the said questions so propounded avoids the policy and there can be no recovery.

" The answer to question No. 2, viz., 'Are you in perfect health, so far as you know and believe,' to which the answer is recorded ' Yes,' does not avoid the policy unless the answer was not only false, but designedly false. Questions, which are general and indefinite in their terms, such as No. 14, A. B. C., about which opinions differ as to what constitutes the interrogatory, are interpreted according to the usual and ordinary significance of the terms and words used, and the jury must interpret whether the answer is full, true, and complete in such reasonable information as the question naturally called for. To constitute an answer not full or not complete, F. E. Sibert must have suppressed some fact, which the question reasonably called for, and which fact was material to the risk. If the jury believe that each of the answers to the said several interrogatories are true, full, and complete, and the answer to No. 2 was not also fraudulently made, then they should find for the plaintiff the amount of the insurance, with interest from the day the same became payable, and if, on the other hand, the answer to any of the interrogatories was not true, full, and complete, then the jury must find for the defendant, the answer to No. 2 being excepted, which, as stated above, to avoid the policy must be not only false, but fraudulent.

" 3. All of the questions and answers are to be considered as of the day of the application, none of them so far as they are referred to in the evidence have reference to any future condition or state after that date. And all the evidence which has been introduced, which has reference to any condition or state of F. E. Sibert, subsequent to that date, is to be considered only in so far as it throws light upon his condition, as of, or previous to, that day.

" 4. The policy, if held in force, became payable on the day that proof of death was furnished to the company, or it declined to pay for some reason, other than it was not furnished with such proof."

The defendant (plaintiff in error) excepted to the opinion of the court in refusing to give the seven instructions tendered by it, and in giving the four instructions of its own.

*Barton & Boyd* and *Taverner & Bauseman*, for the plaintiff in error.

*Walton & Walton*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

It is not necessary to encumber this opinion with comment in detail upon the twenty-four bills of exceptions taken in the court below. In the main they were not relied on in the argument here, are not well taken, and the action of the court must be regarded as affirmed in respect to the questions thereby raised, except in the particulars hereinafter mentioned.

Bills of exceptions Nos. 21 and 23 relate to the refusal of the court to give seven instructions asked for by the defendant, and giving in lieu thereof four instructions of its own. The instructions given were sufficient except in one particular, and in that particular they are not remedied by the instructions

refused, hence there was no error in refusing the instructions asked for by the defendant.

Instruction No. 2, given by the court, lays down the proposition that "To constitute an answer not full or complete F. E. Sibert must have suppressed some fact which the question reasonably called for, and which fact was material to the risk." This is not sound. The contract of insurance under consideration expressly declares that all the answers contained in the application for insurance, together with those contained in the declaration to the company's medical examiner, are warranted to be true, full, and complete, whether written by the insured or not, and are offered to the company in consideration of the contract. The answers being warranties, it was a matter of no consequence whether they were material to the risk or not. A warranty is a stipulation on the literal truth or fulfilment of which the validity of the entire contract depends. It is in the nature of a condition precedent, and must be strictly complied with, whether material or not. *Fire Ins. Co.* v. *West*, 76 Va. 575; *Ins. Co.* v. *Morgan*, 90 Va. 290. This error, however, cannot now be availed of by the plaintiff in error, for the reason that in its sixth instruction, which was refused, the court was asked to instruct the jury to the effect now pointed out as erroneous. A party cannot invite the court to commit error by asking for an erroneous instruction, and be permitted afterwards to have the verdict set aside for the error into which the court has been thus misled. *Kimball & Fink* v. *Friend*, 95 Va. 125.

The twenty-fourth bill of exception is to the action of the court in refusing to set aside the verdict of the jury and grant a new trial upon the ground that it was contrary to the law and the evidence. It is difficult to perceive how the jury could have reached the conclusion they did upon the evidence in this case. The sole issue in the case was whether or not the answers contained in the application for insurance, and in the declaration to the medical examiner, were true, full, and complete. If true, the plaintiff was entitled to recover. If

not true, the verdict should have been for the defendant. Among other questions in the declaration to the company's medical examiner, the insured was asked who his family physician was, and when and for what his services had been sought. He answered that Dr. D. L. Shaver was his family physician, and that his services had been sought for nothing. Dr. Shaver testifies that prior to September 14, 1895, the date of the policy, he was consulted by the insured in regard to his health, who stated that he had been and was still drinking too much, and was asked by the insured if he could not do something to help him. The testimony of this witness shows that these conversations were numerous, beginning as far back as three years before the date of the policy, and continuing from time to time until the insured died, in January, 1896, four months after the policy was taken out. This witness further testifies that in November, 1894, he treated the insured for stomach derangements, neuralgia, and diseases resulting from drink; that he found him in bad condition from excessive use of alcoholic liquor, and told him that a continuation of the habit for two years would end his life. Witness further says that insured spoke to him about treating him for drink four, six, or more times within the twelve months immediately preceding the date of the policy. The further question was asked: " Have you ever had, or been subject to, neuralgia ? " The answer to this question was, " No." The evidence of the family physician was that he had treated insured for neuralgia prior to the application for the policy. The further question was asked: " What other physician have you consulted ? " The answer to this question was, " None." The evidence shows that in June, 1895, and in August, 1895, about one month before the policy was applied for, the insured consulted Dr. Graves, and asked if he could relieve him from alcoholism saying that he was annoyed all the time with neuralgia caused by drink. The further question was asked: " Have you ever had special treatment for the alcoholic habit ? " The answer

to this question was, "No." The evidence of the family physician and Dr. Graves both show that they had each, at different times, prior to the date of the policy, treated the insured for the alcoholic habit, and the evidence of Dr. Campbell shows that, about the time the policy was taken out, or shortly thereafter, the insured applied to him for the " Keely Cure " treatment.

Other instances might be given of untrue answers to the questions asked, but it is unnecessary to multiply them, for if any one of said answers is shown to have been untrue, there can be no recovery under the terms of the warranty entered into by the insured.

Recognizing and giving full force to the law requiring that the case shall be heard by this court as upon a demurrer to the evidence, we are of opinion that the motion to set aside the verdict should have prevailed.

There is no evidence in the record in conflict with that which shows the answers to be untrue. There is much evidence offered by the defendant in ¡error tending to show that the insured was a temperate man, and if that were the issue the evidence might be regarded as conflicting. The issue, however, was not whether the insured was a sober man, but whether he had fulfilled the warranty that his answers should be true, full, and complete. Upon this issue the evidence was clear and uncontradicted, and the answers made were not true.

For these reasons the judgment of the Circuit Court must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed.*