# CHARLESTON.

CARNEFIX, *Admr.* v. KANAWHA & MICHIGAN RAILROAD CO.

Submitted January 13, 1914.   Decided January 27, 1914.

1.   RAILROADS—*Crossings—Mutual Duties.*

While it is the duty of a traveler, about to pass over a railroad track at a public crossing, to exercise reasonable care and caution for his personal safety, and for this purpose to stop, look and listen, it is also the duty of the carrier's agents in charge of a train to exercise the same degree of care and caution and to give such warnings and signals as will tend to prevent injury to persons using the crossing as a part of the public highway.   (p. 538).

2.   SAME—*Crossing Accident—Burden of Proof—Questions for Jury.*

In an action to recover damages for an injury inflicted by a railroad company at a public crossing, the presumption of law is that the person injured and the company's agents observed the reciprocal duties imposed by law; and if the plaintiff would recover the burden rests on him to prove the negligence of the company's agents; which being established, the burden rests on it to prove contributory negligence on the part of the person injured.   Where there is conflict in the evidence in either aspect, it is for the jury to determine, from all the facts and circumstances of each particular case, whether plaintiff has right to a recovery therein.   (p. 538).

3.   SAME—*Crossing Accident—Positive and Negative Evidence—Probative Effect—Questions for Jury.*

The testimony of one witness, who denies that a railroad whistle was sounded on a given occasion, is as positive evidence as the testimony of another who affirms the fact, where each has equal opportunity of hearing and the attention of the former because of special circumstances is equally drawn with that of the latter to the sounding of the whistle.   The denial by the one and the affirmance by the other produces a conflict of evidence, which it is the province of the jury to determine.   (p. 536).

4.   APPEAL AND ERROR—*Verdict—Conflicting Evidence.*

Where a case is fairly submitted to a jury, and a verdict upon conflicting evidence rendered, the court will not disturb its findings, unless plainly wrong or manifestly against the weight of the evidence.   (p. 537).

Error to Circuit Court, Fayette County.

Action by J. W. Carnefix, administrator, against the Kanawha & Michigan Railroad Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Leroy Allebach* and *W. N. King,* for plaintiff in error.

*R. T. Hubbard, Jr.,* and *Dillon & Nuckolls,* for defendant in error.

LYNCH, JUDGE:

By an action of trespass on the case, J. W. Carnefix, administrator, seeks recovery of damages from the Kanawha. & Michigan Railroad Company for the killing of his son, Roy A. Carnefix, at a public crossing. From a judgment on the verdict of a jury, defendant obtained a writ of error.

The decedent, a young man fifteen years of age, was killed at a public crossing, about six o'clock in the morning of August 29, 1910. He was driving a two horse team and wagon from Boomer to Gauley Bridge. He and the train were moving in the same general direction up and on the north side of the Kanawha river. With others, also in charge of a team but going in the opposite direction, he stayed at Camp Rock the night preceding the accident. The place of encampment was a short distance below the crossing at which Carnefix was killed. The road thence to the crossing was at that time rough, rocky, and descending until within thirty-five or forty feet of the railroad track, from which point to the track the road-bed was sandy and nearly level.

The fireman says he did not see the team until the train was about 200 feet from the crossing, and that it was then standing on the level part of the road, five feet from and parallel with the railroad track; that, when the train was about 100 feet of the crossing, he first saw Carnefix, who, according to his testimony, suddenly arose from some position within the bed of the wagon or from the ground, immediately turned the team towards the crossing, and endeavored to drive over the track in front of the rapidly approaching train, a collision with which he also says was therefore unavoidable by the engineer; that the speed of the train was thirty-five miles an hour; that, as soon as possible after the first view of Carnefix, the engineer applied the emergency brake, sounded the whistle, and made every possible effort to avert the imminent danger of a collision; and that, while the engineer could not avoid impact with the wagon, he did succeed in stopping the

train before the rear coach had cleared the crossing. The engineer says he did not see, and explains his inability to see, the wagon and team until the engine was within 75 feet of the crossing. . Both the engineer and fireman, and others some of whom were and others were not passengers, testify to the sounding of the signals in the manner and at the distance required by the statute.

If the team and wagon were standing, on that occasion, in the position detailed by the fireman, plaintiff can not recover, because of decedent's obvious negligence. But, while no other person examined as a witness saw the accident, there is in the record evidence by one witness, who says he was present a short time thereafter, and made an examination of the horse- and wagon-tracks, and that these tracks indicated that the team and wagon did not deflect from a straight course while passing over the level and sandy portion of the highway. On the contrary, he says the tracks indicated that both team and wagon had proceeded in a direct line over the level space towards and onto the crossing, thus negativing the position occupied by both team and wagon as detailed by the fireman. This testimony is not contradicted by any witness other than the fireman, and by him only by statements to which we allude in another connection.

Again, the record discloses the testimony of at least three witnesses who say they were in a position to hear, and were interested in observing whether the warning by bell or whistle was given on that occasion, and they testify unequivocally that the warning was not given until the train was within a short distance in time and space of the crossing. The interest which occasioned their attention to the failure to give the signals at the "whistling post" was, as they explain, that their place of employment was on the south side of the river opposite the post, and they began their daily work at the sound of the whistle of this train on its morning trip eastward, and that the failure to sound it on the day of the accident was thus impressed on their minds, and especially as in a few seconds thereafter they heard the danger signals given when the train was within close proximity to the crossing and the crash caused by the impact of train and wagon immediately ensuing. Or, as stated by the witness Meador: "Every morning the

whistle would blow for the crossing about the time for us to go to work, and we would all gather up together and talk until the train would whistle, and then we would say it is time to go to work; and that morning we all made mention that the train did not whistle for the crossing."

As said in *Railroad Co.* v. *Bryant,* 95 Va. 213, the testimony of a witness who denies that a railroad whistle was sounded on a given occasion is as positive evidence as the testimony of another who affirms the fact, where each has equal opportunity of hearing and the attention of the former because of special circumstances is equally drawn with the latter to the sounding of the whistle. The denial by the one and the affirmance of the other produce a conflict of evidence, which it is the province of the jury to determine.

Thus, the proof of these material facts, and the credibility of the witnesses testifying as to them, were submitted to a jury, which, by the verdict, found against defendant. Can this court say the finding is so plainly against the weight of the evidence as to authorize interference by this court or the trial court? In view of former decisions, that question must be answered in the negative. The jury must determine the facts of the case, when properly submitted; and courts will not interfere with its findings, except where it is either plainly contrary to the weight of the evidence, or is the result of bias, partiality, prejudice, or undue influence.

In this case, the jury could, and perhaps did, undertake to discredit the evidence of the fireman, who said Carnefix suddenly arose from a position invisible to the witness, upon the immediate approach of the train, and turned the team from its position five feet from and parallel with the train, and succeeded in driving the horses across and clear of the track, before the impact of the engine. If it did thus undertake to discredit these statements, it could find cause therefor, upon a fair and reasonable analysis of the facts admitted by the engineer and fireman. If it is true that the speed of the train was 35 miles an hour, or 51 feet a second, it covered in less than six seconds the greatest distance at which either the fireman or engineer could see the crossing, in four seconds the distance of 200 feet at which the fireman first saw the wagon, or in two second the distance of 100 feet at which he first saw

Carnefix, who, according to the fireman, succeeded in securing control of and turning the horses from a position parallel with the track towards the crossing and in driving them over and clear of the crossing within a little more than two seconds—a feat hardly possible, even under the most intense excitement. It was within the province of the jury to say, as by its verdict it virtually has said, that it did not credit the testimony of the fireman as to this conduct by Carnefix, and to credit the testimony to the contrary. Neither this nor the trial court can set its findings aside, except for reasons which do not appear in this case.

Besides, in the absence of any evidence to the contrary, it is presumed that Carnefix stopped, looked and listened before undertaking to cross defendant's track. The court can not presume that he did not do all the law requires him to do in order to avoid the accident, or that he contributed to his injury to an extent precluding recovery in this action. *Young v. Railroad Co.,* 44 W. Va. 221; *Railroad Co. v. Bryant,* 95 Va. 221; *Kimball v. Friend,* 95 Va. 125; 33 Cyc. 1072; *Railway Co. v. Weber,* 76 Pa. Super. Ct. 157; *McBridge v. Railroad Co.,* 19 Ore. 64.

Contributory negligence is defensive. He who would rely on it to defeat recovery must prove, by a preponderance of evidence, the fact of negligence, and that it was the proximate cause of the injury. *Railroad Co. v. Tyree,* 110 Va. 38; *Ewing v. Lanark Fuel Co.,* 65 W. Va. 735; *Carrico v. Railroad Co.,* 39 W. Va. 86; *Snoddy v. Huntington,* 37 W. Va. 115; 33 Cyc. 1072. While one about to pass over a public railroad crossing must use ordinary care for his own personal safety, and avoid going into a position wherein collision with an approaching train is inevitable; yet the mere fact that he did get into such position is not conclusive evidence of contributory negligence on his part. Whether he used due care is a question for the jury. *Kimball v. Friend, supra.*

In view of the evidence, the conclusion is reasonable that neither whistle nor bell was sounded in time sufficient to permit Carnefix to escape the collision, and that if either had been thus sounded the accident might not have occurred. If properly warned, he could, and presumably would, have avoided the injury to himself and team. True, the burden rests on

plaintiff to show failure by defendant to observe the requirements of the statute in this respect.  But, as stated, there is in the record sufficient testimony as to the performance of the reciprocal duties of decedent and defendant on which the jury could speak favorably to plaintiff.  By its verdict, the jury has also found, in accordance with the fact admitted by the trainmen, that when in close proximity to the crossing, in fact even when on it, one can not see along the track a distance exceeding 228 feet in the direction from which the train was then approaching the crossing.  The track at that point is on a double curve, first inward and then outward, to conform to the changes in the direction of the river and the projections of the adjacent hills.

Finding no reversible error in the record, we affirm the judgment.

*Affirmed.*