| 97 | 653 |
|----|-----|
| 100 | 50 |

| 97 | 653 |
|----|-----|
| f106 | 136 |

| 97 | 653 |
|----|-----|
| 108 | 789 |

| 97 | 653 |
|----|-----|
| 109 | 735 |

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MARSHALL'S ADM'R v. VALLEY RAILROAD CO.

### NOVEMBER 23, 1899.

1. APPEAL AND ERROR—*Two Trials—Adverse Instructions—Exceptions.*— Where there have been two trials of an action at law, the first resulting in a verdict for the plaintiff, and the second in a verdict for the defendant, and the defendant has failed to except to the rulings of the trial court in granting or refusing instructions at the first trial, neither party can object to such rulings in this court—the plaintiff, because he was not injured thereby; and the defendant, because he failed to except.

2. RAILROADS—*Obstructing Highway—Temporary Highway—Faulty Construction.*—A railroad company whose duty it is to maintain a bridge over its track in a public highway may obstruct the highway while necessary repairs are being made on the bridge, but if it attempt to make a temporary roadway for the use of the public, it must exercise reasonable care to make such roadway reasonably safe.

3. PUBLIC HIGHWAY—*Safe Condition—Use in Night Time.*—As a public highway may be used in the darkest night, a traveller has a right to presume that it is in a reasonably safe condition.

4. PUBLIC HIGHWAY—*Temporary Highway—Faulty Construction by Railroad Company—Liability of County and Company.*—A railroad company which constructs, with the consent of the county authorities, a temporary roadway for the use of the public, while repairing one of its bridges, must make the use of such roadway by the public reasonably safe. If it fails to do so it is liable for the resulting damages, although there was no such liability on the county.

5. VERDICTS—*New Trials—Conflicting Evidence—Inferences.*—The verdict of a jury is entitled to great respect, and should not be disturbed even by the trial court, unless plainly against the weight of the evidence; and, while greater latitude is allowed the trial judge

in granting than in refusing new trials, yet if reasonable men may fairly differ as to the inferences to be drawn from the facts, the verdict should not be disturbed.

Error to two judgments of the Circuit Court of Augusta county, rendered May 24, 1898, and November 14, 1898, respectively, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

                                                    *Reversed.*

The opinion states the case.

*Curry & Glenn* and *H. St. Geo. Tucker*, for the plaintiff in error.

*J., J. L. & R. Bumgardner*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This action was brought by Marshall's administratrix in the Circuit Court of Augusta county in April, 1898, against the Valley Railroad Company, for the recovery of damages by reason of the death of her intestate, William H. Marshall, which she alleges was caused by the negligence of the defendant company.

At the May term, 1898, the case was tried by a jury, which rendered a verdict in favor of the plaintiff for $2,700, which, upon the motion of the defendant, was set aside, as being contrary to the law and the evidence. At the November term the case was again tried, and a verdict rendered in favor of the defendant, upon which the court entered judgment.

At the first trial the plaintiff in error took six bills of exceptions to the various rulings of the court, which we are now to consider. Some of these exceptions are to the refusal of the court to give instructions asked for by the plaintiff; others are to the ruling of the court in giving instructions asked for by the defendant and objected to by the plaintiff.

As the plaintiff in error secured a verdict at the first trial upon which she is now asking this court to enter judgment in her favor, the instructions asked for by her and refused by the court need not be considered; nor is it necessary to pass upon the instructions given for the defendant. Neither of the parties to this controversy can call in question the instructions given at that trial; the plaintiff in error, because she secured a verdict upon which she is now asking a judgment; the defendant in error, because it did not except or in any way object to them, and a new trial was granted upon its motion, and a subsequent judgment rendered in its favor.

The only question for our consideration now is the propriety of the court's action in setting aside the first verdict as being contrary to the law and the evidence.

It appears from the record that the county road leading from the Greenville road to Christian's creek, in Augusta county, crosses the right of way of the Valley Railroad at a point where there is a cut from forty to fifty feet deep. There was a bridge over this cut which it was the duty of the defendant company to maintain and keep in proper condition and repair, and, in the performance of this duty, it undertook to remove the wooden bridge and replace it with an iron structure, and for this purpose tore up the old bridge. The railroad runs at this point north and south, and the county road crosses it east and west. At the west side of the bridge going south the defendant company opened a passageway for the accommodation of the public while the new bridge was in process of construction. A person approaching from the west when within a few feet of the end of the bridge would turn short to the right, pass along this temporary roadway with a wire fence upon his right and the cut upon his left for about two hundred yards, to a point where the railroad could be crossed at grade. The end of the bridge was blocked with material taken from the old bridge, and a portion of it was piled for a few feet to the south, and then came a long

tool-box, which, altogether, constituted a barricade at the west end of the bridge and to the south along the brink of the cut for a distance of from forty to fifty feet. Immediately to the north of the bridge, and near the embankment, stood a derrick used by the bridge-builders about their work. From this derrick, running south, was a guy-rope fastened to a post let into the earth at a distance of about one hundred feet to the south of the bridge. At the end of the tool-box this guy-rope was high enough from the ground to permit a person on horseback to pass underneath it without touching it, and from that point sloped down until it touched the ground at the guy-post. At the west end of the bridge this guy-rope was about eight feet from the brink of the cut, but at a point a few feet from the guy-post, where the rod was only about eighteen inches above the ground, there was a break in the bank of the cut, which reduced the distance between the rod and the brink to something less than two feet. At this point the cut is very precipitous, but about half-way down there was an offset in the bank about two feet in width. On the night of the 18th of October, 1897, William H. Marshall, the husband of plaintiff in error, left the city of Staunton upon horseback. When within about one-quarter of a mile of the west end of the bridge he met Charles Foley and James Mason, who afterwards testified in this cause. The night was very dark, with a drizzling rain, so dark that the witnesses named, though on foot, ran against the fence two or three times, and were unable to keep the road. Marshall asked them if they knew whether anything had been done at the bridge, and was told that there was a derrick there, but that witness supposed the bridge had not been torn down, because there were no lights. Nothing more was seen of Marshall until early the next morning, when he was found lying upon the railroad track about eighty feet to the south of the railroad bridge, insensible, and in a dying condition. His horse was upon the embankment in the temporary roadway, not far from the bridge; the saddle had turned under its belly; one

rein of the bridle was broken; a sack found, with a whip under it, and near the sack the left stirrup and leather, a few feet nearer the bridge than the point at which Marshall is supposed to have fallen. At, or very near, the point where the embankment had broken away there was the track of a horse. Marshall was on his way to a farm about one mile and a half distant, which he owned jointly with his brothers and sisters. The bridge, the cut, the whole locality, were familiar to him, as appears from the evidence of his brother, and, while knowledge of the progress that had been made by the bridge-builders cannot be imputed to him, he did know that the work had been commenced; that a derrick was in position, and not only was he informed immediately before reaching the bridge that there were no lights, but their absence was, of course, obvious to him. Upon reaching the western end of the bridge he must have made a short or sharp turn to the right, leaving the county roadway, which had been blockaded, and, passing into the temporary roadway, and, when there, he knew that, owing to the darkness of the night and the narrow space between the wire fence upon his right and the precipice upon his left, he was in a position of danger, but he did not know, and could not have known, the exact position of the guy-rope with reference to the brink of the embankment; nor did he know that the obstruction interposed between the right of way and the cut terminated at a point fifty feet south of the bridge, where the guy-rope was still sufficiently high to permit him to pass under it on horseback. These were the facts as shown by the evidence.

The railroad company was engaged in a lawful undertaking, which it was performing in accordance with the views of the authorities of Augusta county. It cannot, therefore, be held responsible if it acted with reasonable care, as reasonable care is the measure of its duty in this case. When it became necessary to repair the bridge it might very well have obstructed the highway while the work was being done, but with the approval

of the county authorities it opened a temporary roadway along its right of way for the accommodation of the public.   It was its duty to exercise reasonable care in making this temporary roadway reasonably safe, and this duty it seems to have recognized, for, in order to fulfil it, the barricade was extended from the bridge fifty feet toward the south.   If that barricade had not been built, and if the guy-rod had not been put just where it was placed, it is probable this accident would not have occurred, for the horse would have halted at the brink of the precipice.   Had the obstruction been continued south of the tool-box, until a point was reached at which a horseman could not have passed under the guy-rope, it is probable this accident would not have happened, but, unhappily, the effort to protect the public resulted in disaster.   A horse passing under the guy-rope while bearing to the right found itself upon a narrow way, five or six feet wide at first and diminishing until, when it reached the offset at the point of the accident, it was reduced to less than two feet in width, and once in that position escape was next to impossible.

"A public highway may be used in the darkest night; a night so dark as that the keenest and clearest vision might not be able to detect obstacles and defects.   In such a case any man travelling upon it is practically a blind man" (*Harris* v. *Uebelhoer,* 75 N. Y., at p. 175, quoted with approval in *Chisholm* v. *State,* 141 N. Y., at p. 250), and has a right to presume that the highway is in a reasonably safe condition.   It is true that a traveller injured upon a public highway has, in this State, no right of action against the county authorities, and it is true, in this case, that those authorities approved what was done by the defendant in error; but it remains that the defendant in error was constructing a bridge in compliance with its duty; that in doing so it closed temporarily the public highway; that it invited the public upon its premises to be used as a highway while the bridge was being constructed, and it thus became its duty to make the use of it by the public reasonably safe.   The jury found by their verdict

that the injury to the plaintiff's intestate was due to the failure
of the defendant company to exercise reasonable care; and, while
it is a case by no means free from doubt, we cannot say that the
verdict of the jury upon this point was plainly against the weight
of the evidence.   By their verdict the jury also found that the
plaintiff was not guilty of contributory negligence.

In· *Southern Railway Co.* v. *Bruce's Adm'r, ante* p. *92,* it is said:
" Contributory negligence is a matter of defence, and the burden
of establishing it is upon the defendant, but whenever the plain-
tiff's own case raises the presumption of contributory negligence,
the burden of proof is immediately cast upon him, and in such a
case it devolves upon the plaintiff, as of course, to clear himself
of the suspicion of negligence that he himself created."

As the trial court set the verdict aside, the case is now before
us as upon a demurrer to the evidence, "but," as was said in *Chap-
man* v. *Real Estate Inv. Co.,* 96 Va. 177, " if the trial judge
is dissatisfied with the verdict, and grants a new trial, some lati-
tude must be allowed to his discretion, especially where the pro-
priety of its exercise is affirmed by a verdict on such new trial
for the party to whom it was granted," as was the case here.
The verdict of the jury, however, is entitled to great respect, and
it should not be disturbed even by the trial court, unless plainly
against the weight of evidence.   While it is true that the de-
ceased had a general acquaintance with the situation, there is no
evidence that he was accurately informed of the position of the
derrick, the guy-rope, and the obstructions interposed by the
defendant company.   He was travelling, as he had a right to do,
upon a public highway temporarily diverted by the act of the
defendant company so as to pass over its own premises while it
was engaged in the performance of its duty, and the deceased
had  a right to presume that all reasonable precautions for his
safety had been taken.   The precise manner in which the acci-
dent occurred is not disclosed by the record, and will never be
known.   The presence of horse tracks between the guy-rope and

the brink of the precipice warranted the jury, however, in inferring that the deceased had, in the darkness of the night, passed under the guy-rope at the end of the tool-box, and thence to his death. There are some minor facts which seem to be inexplicable. When the horse was found the saddle had turned underneath its belly, the stirrup leather and bridle rein were broken. The stirrup was found between the point of the accident and the bridge, and the blanket a few feet distant with the whip beneath it. How these articles came to be just where they were found the next morning is one of the unsolved mysteries of this case. It seems to be certain, however, that the stirrup leather was not broken at the time nor as a result of the struggle of the horse to extricate himself by which the deceased was thrown over the precipice. If his fall had been due to the breaking of the stirrup leather, the stirrup itself must of necessity have gone over the precipice. Nor can any reasonable explanation be offered of the fact that the whip was found underneath the sack. There is much in these circumstances to invite conjecture; but, as we have said, no one knows or can know the precise manner in which Marshall came to his death, and mere conjecture is of no value in solving the difficulty. We cannot say that contributory negligence on the part of the deceased is a certain and incontrovertible inference from the evidence. Whether or not that inference is to be drawn from the facts proved is a question about which reasonable men may fairly differ, and when that is the case an issue is presented for the determination of the jury, and the verdict on the first trial should not have been disturbed. *Kimball v. Friend*, 95 Va. 125, and authorities cited.

The judgment complained of must be reversed, and a judgment entered for the plaintiff in error for $2,700, with interest from the 23d day of May, 1898, with costs.

                                                        *Reversed.*