# Staunton.

## CHESAPEAKE & OHIO RAILWAY CO. v. PIERCE.

### September 29, 1904.

1. APPEAL AND ERROR—*Demurrer to Evidence—Bill of Exception.*—A demurrer to the evidence is a part of the record and no bill of exception is necessary, but the filing of such bill will not prevent this court from reviewing the ruling of the trial court on the demurrer.

2. DEMURRER TO EVIDENCE—*Case at Bar—Decision of Trial Court.*—Upon the evidence in this case the jury might have found for the plaintiff upon all the issues made, and hence it was the duty of the trial court, upon the defendant's demurrer to the evidence, to so find.

Error to a judgment of the Circuit Court of Alleghany county, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*R. L. Parrish & Son,* for the plaintiff in error.

*Daniel Harmon* and *Bowles & King,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

George A. Pierce, the plaintiff in the court below, was em-

ployed by the Chesapeake & Ohio Railway Company as a car inspector at Clifton Forge, and, while so engaged, was run upon and injured by a switch engine.

Upon the first trial there was a verdict in favor of the plaintiff, which the court set aside upon motion of the defendant company. At the next trial, the defendant company demurred to the evidence, which was the same as on the former trial. The court, a different judge presiding, overruled the demurrer and rendered judgment in favor of the plaintiff for the damages found by the jury in their conditional verdict, and to that judgment this writ of error was awarded.

Upon the threshold of the case, it is suggested by the plaintiff that the defendant company has made the demurrer to evidence a part of the record by a bill of exception, and that this cannot be done under the decision of the court in the case of *C. & O. Ry. Co.* v. *Sparrow*, 98 Va. 630, 37 S. E. 302.

That case did decide that no bill of exception to the ruling of the court on a demurrer to evidence was necessary to enable this court to review such ruling, because a demurrer to evidence, like a demurrer to a pleading filed in the cause, is a part of the record. But it was not intended to hold, nor was it held, in that case, that the filing of such a bill of exception (a wholly unnecessary act, and a practice which should not be permitted, because it unnecessarily encumbers the record, and adds to the cost of copying and printing it), would prevent this court from reviewing the ruling of the court upon the demurrer to the evidence.

The errors assigned are, (1st) that the evidence, considered as on a demurrer to evidence, does not show that the plaintiff's injuries were the result of the defendant's negligence, and (2d) even if they were, the plaintiff was guilty of contributory negligence.

It appears that the plaintiff was one of two employees of the

defendant company, whose duty it was to inspect all passenger trains stopping at Clifton Forge, where there is a passenger station, and a platform attached about six hundred feet long, a number of switches, and two main tracks. The platform is made of plank two or three inches thick, laid between and on either side of the rails on the main tracks, and extending from the station across both. West-bound trains pass over the track nearest the station, and east-bound trains pass over the other. The distance between the tracks is thirteen feet, from the center of one to the center of the other, and between Pullman coaches on passing trains about three feet. It was the duty of the inspectors to be on opposite sides of the trains as they came into the station, and in such position that they could from sight and sound ascertain whether any part of the cars was loose and dragging, or whether any of the wheels were flattened, and after the cars came in to go closer to the cars and inspect them. One of the rules of the defendant company was that a train must not pass between a station building and a passenger train engaged in taking on or letting off passengers, until signalled ahead.

On the night of the accident, just before midnight, as an east-bound passenger train, about 300 feet long, was approaching the station, the plaintiff and the other inspector, who were standing near the baggage-room, after the arrival of the train had been announced, started together in the direction from which the train was coming to perform their duties. The plaintiff, whose mental faculties were impaired by the injuries complained of, does not give a very intelligible account of the accident. His evidence tends to prove that as the passenger train came in he looked in both directions for engines on the west-bound track, and seeing none he stepped upon or across that track and was engaged in his work of inspection, when some one hallooed to him to get out of the way of the yard engine;

that as he turned around and attempted to jump across the track on to the station platform the yard engine struck him; that he was working under the instructions of the foreman of inspectors; that in inspecting trains he stood about the second rail from the depot porch, which was about as close as he could get and look under the passenger coaches and be out of danger from rods or other things that might be broken and hanging down or out from the passing train; and that this was the proper place to stand, as he understood from his instructions.

Two of the plaintiff's witnesses testified that the usual place for car inspectors to stand, when inspecting east-bound trains, was on or near the inner rail of the west-bound track, and that when in that position they were in danger from trains passing on that track. One of these witnesses testified that he was standing on the station or depot platform the night of the accident; that when he first saw the plaintiff he was standing on the track with his wrench and hammer in one hand and his torch in the other inspecting the cars, and when the engine and about four coaches had passed him some one hallooed at him, and as he faced the depot the yard engine came by, striking and dragging him to the upper end of the platform; that the yard engine was running backward at the rate, as he thought, of from twelve to fifteen miles an hour.

Another of his witnesses testified that the engine was running at least fifteen miles an hour.

The expressman had his trucks on the west-bound track at the east end of the platform, between the point where the plaintiff was injured and the point from which the engine came, which had to be removed before the engine could pass. The switch engine and the passenger engine met about midway of the station platform, the latter running about four miles an hour, making considerable noise, and the former, according to the plaintiff's evidence, from twelve to fifteen miles an hour.

There was evidence that it was usual for passengers, employees, and other persons to collect and stand upon the platform across the west-bound track when passenger trains were arriving, stopping or standing at the station, and that it was not usual to run yard engines over the west-bound track when there was a passenger train on the other track, and that when it was done some one went ahead of the engine to get people out of the way; that the yard engine ran about 75 or 100 yards after the plaintiff was seen on the track inspecting the cars; that the engineer could have seen him if he had looked, and that the engine could have been stopped in about two lengths, with the emergency breaks, running as it was.

The evidence of the defendant company tended to prove that the plaintiff's position for inspection was on the opposite side of the train from where he was injured; that there was no necessity, in inspecting the train, for him to go upon the track or into a place of danger; that his first duty was to look out for his own safety, as switch engines might be expected at any time on the yard; that the plaintiff stepped upon the track 10 or 15 feet ahead of the yard engine running at the rate of eight or ten miles an hour; that it was not running in violation of any rule of the company; that its bell was ringing from the time it started until the accident occurred, and that a lookout ahead was kept.

Upon all the evidence in the case, the jury might have believed that the defendant company was running its yard engine at the time of the accident, if not in violation of its rule, at least in violation of the usual manner in which it ran it, and gave warning of its approach on that track, when a passenger train was on the other track; that the plaintiff was at the usual and proper place for inspecting cars, having no reason to expect that a yard engine would be running on the track at that time; and that his danger could have been seen and the accident

.avoided if the employees on the engine had been performing their duty; and could have found in favor of the plaintiff upon the questions of negligence and contributory negligence. And since the jury might have found for the plaintiff on these questions, the court, upon the defendant's demurrer to evidence must so find. *Bass* v. *Norfolk Ry. Co.*, 101 Va. 1, 40 S. E. 100.

We are, therefore, of opinion that the Circuit Court did not err in overruling the demurrer to the evidence, and that its judgment must be affirmed.

*Affirmed.*