# Richmond.

WOOD'S ADMINISTRATRIX v. SOUTHERN RAILWAY COMPANY.

December 7, 1905.

1. NEGLIGENCE—*Case at Bar—Demurrer to Evidence.*—Upon the evidence in this case, the jury might have found that the plaintiff's intestate had the right to use a certain instrumentality, that he was using it in the performance of his duties at the time the injury complained of was inflicted, that it was in a defective condition, that the defendant was chargeable with knowledge of the defect and with negligence in not repairing it, and that the plaintiff was not chargeable with contributory negligence; and as the jury might have so found it was the duty of the court so to decide upon a demurrer to the evidence by the defendant.

2. MASTER AND SERVANT—*Safe Instrumentalities—Primary Use—Secondary Use.*—Although an appliance may be primarily intended for one purpose, if it is convenient and safe to use it for a secondary purpose, and it is so used by a servant with the knowledge of the master, and without objection on his part, he is chargeable with the duty of using ordinary care to see that such appliance is in a reasonably safe condition for such secondary use.

3. EVIDENCE—*Personal Injury—Preponderance of Evidence—Prima Facie Case.*—A plaintiff in an action to recover damages for a personal injury is no more required to prove his case beyond a reasonable doubt than in any other civil action. All that he is required to to do, in order to make out a *prima facie* case, is to make it appear to be more probable that the injury was the proximate result of the defendant's negligence than of any other cause.

Error to a judgment of the Circuit Court of Amherst county, in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Caskie & Coleman,* and *Strode & Tucker,* for the plaintiff in error.

*Horseley & Kemp,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

This action was brought by the personal representative of J. Buckner Wood, deceased, to recover damages for the death of his decedent, caused as alleged by the negligence of the Southern Railway Company.

Upon the trial of the cause, the defendant company's demurrer to the evidence was sustained, and judgment rendered in its favor. To that judgment this writ of error was awarded.

There was evidence tending to prove that about 10 o'clock on the night of February 7, 1904, one of the defendant company's freight trains from Alexandria, arrived at Monroe, a station on the defendant's road in Amherst county. The train was to be placed on a siding there, and the engine taken to the round-house. The front brakeman on the train not being acquainted with the switches at the station, the plaintiff's decedent, who was a yard brakeman, was ordered by the yardmaster to assist in "putting away" the train, and was engaged in that service when he lost his life.

The train came in from the North on the main track, and, after passing the depot, was switched to another track where the engine and tender were cut loose from the cars. The engine and tender proceeded over another switch to the main line, and were backed down that track with the intention of getting on the "lead" track through another switch so as to get to the round-house. As the train went south over the main line, and

before the engine and tender were cut loose, the deceased lit a "fusee", which makes a flaming red light and burns about ten minutes, and stuck it in the ground to give warning to an approaching train from the south. After the engine and tender had been cut loose, and as they were backed north on their way to the round-house, the deceased picked up the lighted fusee, and with his lantern got on top of the tender of the engine and sat on its rear end, holding the fusee in his hand to signal the engineman, and to give warning to the train approaching from the south, and another which was expected from the north.

The position of the deceased was a proper one for the duties he had to perform.

When the engine and tender reached the switch over which they had to pass to reach the "lead" track, it was the duty of the deceased to throw or change the switch. As the engine and tender approached the switch, and were within a hundred or a hundred and twenty-five yards of it, running at the rate of about twelve miles an hour, the deceased was seen sitting on the "man-hole" on the rear end of the tender by the engineman, as he turned to shut off the steam and slow down his engine so as to go in on the switch. There was some slight hitch in reversing the lever and slowing down the engine, and when the engineman again looked in the direction his engine was backing he did not see the plaintiff's intestate, but took "it for granted", as he testified, "that he had gotten down and later would throw the switch."

As soon as the engine stopped, the attention of the engineer was attracted by the action of the car inspector upon the track over which the engine and tender had just passed. The engineer got off his engine and went back to the car inspector, where was found the dead body of plaintiff's intestate.

The car inspector, who was following after the engine, came first upon the lamp of the deceased, then the "man-hole"

cover, and, a little nearer the engine, upon the dead body of the deceased, all between the rails of the track. The cross-ties and ballast between the ties showed that the man-hole cover and the body of the deceased had both been dragged some distance.

The man-hole, upon the cover or lid of which the deceased was sitting when last seen alive, and immediately before his death, is located in the centre of the rear of the tender, in a line with the top of the ladder leading up and down the rear end of the tender. The man-hole cover is about forty inches in length and twenty-one inches in width, oblong in shape, is made of iron, and has upon it an iron hand-hold parallel with the rounds of the ladder referred to above, and of about the same diameter, located on the side of the cover nearer the end of the tender; and the cover is fastened to the tender by hinges on the side next to the engine. It was the common practice of brakemen and others passing over the tender to use the hand-hold of the cover for the purpose of pulling themselves up on the tender from the ladder, and in letting themselves down the ladder. The location of the hand-hold was such that it was convenient and inviting, as well as in common use for those purposes, and there was nothing else by which a person ascending or descending the ladder could as conveniently and safely catch hold of. The hand-hold was also used for raising the man-hole cover to put water into the tank, and that was most probably its primary use.

About thirty miles from Alexandria, on the run from there to Monroe, the man-hole cover slipped when one of the brakemen caught hold of the hand-hold in coming up the ladder and getting on the tender from the rear. The hinges of the cover when found on the track after the accident were broken, one hinge showing a fresh break and the other an old break which

was rusty and had the appearance of having been made some time before. When both hinges were in proper condition, there was no danger of the cover slipping or breaking loose by the use of the hand-hold in getting off or on the tender at the rear.

The contention of the plaintiff is that the proximate cause of the accident, which resulted in her decedent's death, was the failure of the defendant to exercise due care in keeping in a reasonably safe condition the man-hole cover, the hand-hold of which the deceased was using, and had the right to use, in performing his duty at the time of the accident.

The contention of the defendant, as to the negligence charged, is that it is not proved that the plaintiff's intestate had the right to use the hand-hold in getting off the tender; or, if he had, that he was so using it in the performance of his duty when he fell from the tender and was killed.

The evidence not only tends to prove, but the jury if the case had not been taken from them by the demurrer to the evidence, might properly have found, that one of the hinges of the man-hole cover was broken, and that it had been broken for so long that the defendant knew, or could by the exercise of reasonable care have known of its condition. The jury might have further found, even though the primary use of the hand-hold on the man-hole cover was to raise it for the purpose of putting water into the tank, that it was the most convenient and safe way for brakemen and others to get on and off the tender by way of the ladder at the rear end of the tender, and that it was their common practice to so use it, without objection by the defendant; and since it did not prohibit such use (which probably would have seemed absurd), it ought, therefore, to have exercised ordinary care in seeing that it was in a reasonably safe condition for such secondary use. *Coates* v. *Boston, &c. R. Co.,* (Mass.) 26 N. E. 864, 10 L. R. A. 769; *McIntyre* v. *B. & M. R. Co.,* (Mass.) 39 N. E. 1112.

The jury might have further found that the deceased, when last seen alive, was sitting on the man-hole cover at the rear of the tender, in the performance of his duties, when the engine was within one hundred and twenty five yards of the switch, to change which was his next duty; that in discharging that duty in the customary and most speedy and convenient way he would have used the hand-hold on the man-hole cover in going down the ladder at the end of the tender, preparatory to getting on the ground to change the switch, and that while thus using the hand-hold, the other hinge on the man-hole cover was broken, and by reason thereof he fell, or was thrown, in front of the backing engine and tender and killed.

Upon all the facts and circumstances of the case, considered as on a demurrer to the evidence, we cannot say as a matter of law, that the injury complained of was not more naturally to be attributed to the negligence of the defendant than to any other cause. A plaintiff in an action to recover damages for personal injuries is no more required to prove his case beyond a reasonable doubt than in any other civil action. All that he is required to do to make out a *prima facie* case is, to make it appear to be more probable that the injury was the proximate result of the defendant's negligence than from any other cause. *Griffin* v. *Boston, &c., R. Co.* (Mass.), 19 S. E. 166, 1 L. R. A. 698, 12 Am. St. Rep. 526; Labatt on Master & Servant, Sec. 835; *Marshall* v. *Valley R. Co.,* 99 Va. 798, 805, 34 S. E. 455; *Va. Iron C. & C. Co.* v. *Tomlinson, ante,* p. 249, 51 S. E. 362, 364; *Choctaw, &c., R. Co.* v. *McDade,* 191 U. S. 64, 48 L. Ed. 96, 24 S. E. 24.

It is insisted by the defendant that even if it was guilty of negligence in failing to exercise ordinary care to maintain the man-hole cover in a reasonably safe condition, and that the plain-

tiff's intestate had the right to make use of the hand-hold there-
on in getting off the tender, he was guilty of contributory
negligence in attempting to do so under the facts and circum-
stances of the case.

Without discussing further the evidence in the case, and the
proper inferences which the jury might have drawn from the
facts and circumstances proved, it is sufficient to say that we
are clearly of the opinion that if the jury had found that the
plaintiff's intestate was not guilty of contributory negligence,
the court could not have set aside the verdict because contrary
to the evidence. We are of the opinion, therefore, that since
the jury might have found for the plaintiff upon both the
question of negligence and of contributory negligence, we must
so find.

The judgment of the Circuit Court must be reversed, and
this court will enter such judgment as that court ought to
have entered.

*Reversed.*