## Wytheville.

POPLIN'S ADMINISTRATRIX *v.* SOUTHERN RAILWAY COMPANY.

·June 14, 1906.

1. APPEAL AND ERROR—*Question of Fact—Evidence Not Certified—Plea to Jurisdiction.*—Where the jurisdiction of the trial court is dependent on the facts of the case, this court cannot review its decision overruling a plea to the jurisdiction when the evidence upon which the decision is predicated is not made a part of the record by bill of exception or otherwise.

2. DEMURRER TO EVIDENCE—*Death by Wrongful Act—Proximate Cause.*—Whether the proximate cause of the death of a brakeman · on a railroad train, killed while coupling cars, was the fact that, contrary to orders, he was in a place where he had no right to be, or the unsound and rotten condition of one of the cars being coupled, was a question of fact for the jury, and upon demurrer to evidence by the railroad company, judgment should be given against it, where the evidence and the inferences which a jury might have drawn from it are sufficient to sustain plaintiff's contention that the unsound and unsafe condition of the car was the proximate cause of the brakeman's death, and the evidence for the company is conflicting and contradictory.

Error to a judgment of the Corporation Court of the city of Danville in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Peatross & Harris, Leake & Carter* and *Cabell & Custer,* for the plaintiff in error.

*Harrison & Leigh,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

The preliminary question of the jurisdiction of the trial court to take cognizance of the case in judgment cannot be considered on this writ of error. Upon a general replication to a plea to the jurisdiction the court overruled the plea; but the evidence upon which the judgment was predicated is not made part of the record either by bill of exception or otherwise, and the court's ruling is, therefore, not subject to review.

The essential facts out of which the accident, upon which this action is founded, arose are as follows:

About midnight of August 10, 1903, the yard crew of the defendant in error were shifting cars on the company's yard in the vicinity of the city of Danville, employing for that purpose one of its heavy engines, which was headed toward the south and pushing behind it a train consisting of twelve box cars, an oil-tank car, a gondola car, partly loaded with lumber, and a flat car, loaded with iron rails, disposed in the order indicated, with the design of coupling the three last-named cars to twenty-odd loaded coal cars, standing with set brakes on the track near the coal-tipple, and cutting them off from the rest of the train. The crew consisted of an engine-man and fireman; a conductor, Thomas; a front brakeman, Moses; a top brakeman, Poplin, plaintiff in error's intestate; and a head brakeman or coupler, Corbin. The movement of the train was controlled entirely by signals, and it was being pushed up-grade at the rate of about six miles an hour. While Poplin was engaged in setting brakes on the gondola car, next to the oil-tank car, the moving train, with unabated speed, collided with the stationary coal cars, with the result that the timbers of the gondola car gave away and the car was broken

entirely across near the truck, and jammed under the oil-tank car, which was also injured, catching Poplin between the two cars and crushing him to death.

The company demurred to the evidence, and to the judgment of the court sustaining the demurrer this writ of error was awarded.

Two opposing theories are advanced in relation to the proximate cause of the accident. The defendant in error maintains that at the moment of impact between the train and the coal cars, the post of duty of Poplin was on top of the box car next to the gondola car to receive signals from Corbin and transmit them to the front brakeman, Moses, whose duty it was to pass them to the engineman, who controlled the movement of the train; that at the proper time the shut-off signal was given by Corbin, which, on account of the curvature of the track at that point, could not be seen by Moses, and was not taken by Poplin, who, in disobedience of orders, had abandoned his position on top of the rear box car, and in consequence of this failure of duty on his part the collision occurred, which resulted in his death. On the other hand, the plaintiff in error insists that her intestate was at his proper place and in discharge of his duty as brakeman, setting brakes on the gondola car, which, by reason of the rotten and weak condition of the timbers, was insecure and broke under the impact between the moving train and the coal cars; and that the defective and unsafe condition of the car was the proximate cause of Poplin's death.

The former theory is founded alone upon the evidence of Thomas and Corbin, both of whom testified in support of it. But the testimony of Thomas was discredited by that of two witnesses to whom he is alleged to have made a contradictory statement. About one month after the accident happened, when the matter was specially called to his attention, he told

these witnesses, as they assert, that Poplin, when killed, was in discharge of his duty, and if he had been elsewhere at that time "he would have lost his job." The testimony of the other witness, Corbin, is inconsistent in itself and in conflict with statements made by him before the coroner's jury, who investigated the casualty the day after it occurred, and also at the first trial of the case. On the occasions referred to, he said that it was Poplin's duty to put the brakes on the three cars which he was to cut off from the train and couple to the coal cars; that he did not know that Poplin "got between there to put the brakes on, but the brakes ought to have been put on. I heard the brake clucking," a noise made by the ratchet-wheel while hand-brakes are being applied. Yet, at the last trial, to show that it was not necessary for Poplin to quit his position on the box car, he testified that he, the witness, had already set the brakes on the cars in question, despite the fact that they were being pushed up-grade. Notwithstanding his assertion that Poplin's place was on top of the box car to receive and pass signals, he admits that on the first trial he testified that at the time of the accident he was passing signals to Thomas, who was in position to receive and pass them to Moses; indeed, he concedes in his evidence on the last trial that such was the situation of affairs. Upon that theory there could have been no reason for Poplin to remain on the rear box car, while the necessity for his setting brakes on the cars to be cut off plainly appears.

In corroboration of that version of the matter it also appears that the engineman actually received the shut-off signal about the time of the impact, which could not possibly have been passed by Poplin, who, from his position on the gondola car, could not be seen by Moses.

It need hardly be remarked that under the rule applicable to a demurrer to the evidence the testimony of the witnesses,

Thomas and Corbin, must be rejected; and with their evidence out of the case, the theory of the defendant in error, which has no other evidence to support it, must fall.

With respect to the contention of the plaintiff in error that the company did not use ordinary care to furnish Poplin a reasonably safe place in which to work, the evidence is to the last degree conflicting. While the testimony of witnesses for the company tends to show that the gondola car was in a reasonably safe and sound condition, that contention is contravened by the positive testimony of numerous witnesses for the plaintiff in error, who characterize the condition of the timbers as rotten and the car unsafe; and they are corroborated, to some extent at least, by the circumstance that the gondola car was crushed and broken by an impact which all the other cars in the train withstood.

A circumstantial review of the evidence on this feature of the case would serve no good purpose. It is enough to say of of it that, under the rule adverted to, the evidence and the inferences which the jury might have drawn from it are quite sufficient to sustain the allegation upon which the plaintiff in error rests her right to recover, namely, that at the time of the accident her intestate was discharging his duty, and that the unsound and unsafe condition of the car was the proximate cause of his death. There is no escape from that conclusion under the rigorous rule of decision applicable to a demurrer to the evidence—a rule so well settled by numerous decisions of this court that to repeat it here would be superfluous. *Bass' Admr.* v. *Norfolk, &c., Co.,* 100 Va. 1, 40 S. E. 100; *C. & O. Ry. Co.* v. *Pearce,* 103 Va. 99, 48 S. E. 534; *Lane Bros. & Co.* v. *Bott,* 104 Va. 615, 52 S. E. 258; *Wood's Admx.* v. *Southern Ry. Co.,* 104 Va. 650, 52 S. E. 371; *Fisher's Admr.* v. *C. & O. Ry. Co.,* 104 Va. 635, 52 S. E. 373.

*Reversed.*