# Richmond.

FISHER'S ADMINISTRATOR v. CHESAPEAKE & OHIO

RAILWAY COMPANY.

December 7, 1905.

Absent, Harrison, J.

1. MASTER AND SERVANT—*Railroads—Safe Place—Cuts—Overhanging Materials—Track Walker.*—It is the duty of the master to use ordinary care to provide for the servants, a reasonably safe place in which to work. In the case of railroads this duty involves not only the proper construction, but also the proper maintenance and inspection of the roadbed and track. Cuts are as much a part of the tract as fills and bridges, and it is the duty of the railroad company to use due care to prevent the obstruction of its track by land slides, or the casting thereon of other debris created by the common processes of nature. The fact that the company keeps a track walker to examine cuts and warn approaching trains of dangers does not excuse it from the duty it owes of removing earth, stone, or other material in dangerous proximity to the cut, and which is in a condition to slide or fall upon the track.

2. ORDINARY CARE—*When Question for Jury—Demurrer to Evidence—Case at Bar.*—What is ordinary care depends on the facts and circumstances of the particular case. If, upon the facts, reasonable men may fairly arrive at different conclusions, then the question of negligence is one for the jury, and, if the case be heard upon a demurrer to evidence by the defendant, judgment should be entered for the plaintiff. In the case at bar, the evidence was conflicting as to whether the defendant was negligent in failing to remove stone which rolled down upon the track and caued the injury complained of, and hence on its demurrer to the evidence, judgment should have been given for the plaintiff.

3. CONTRIBUTORY NEGLIGENCE—*Conflicting Evidence—Demurrer to Evidence—Case at Bar.*—The evidence as to whether the plaintiff's in-

testate was guilty of contributory negligence was conflicting, and, therefore, upon the defendant's demurrer to the evidence, that question should have been decided in favor of the plaintiff. The evidence strongly tended to show that the plaintiff's intestate was not guilty of negligence in remaining at his post of duty while many others, who had no duty imposed upon them, remained at the same place.

Error to a judgment of the Circuit Court of Bedford county, in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Caskie & Coleman* and *Frank T. Glasgow,* for the plaintiff in error.

*Harrison & Long,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought by the plaintiff in error to recover damages for the death of his intestate, which is ascribed to the negligence of the defendant.

The case arose as follows: Fisher had been employed for many years by the defendant in the capacity of locomotive engineer on its passenger trains on the James River Division, a line of road extending from the city of Richmond, along James river, to Clifton Forge. The road was built by the predecessor in title of the defendant, the Richmond and Alleghany Railroad Company, in the year 1881, and was located principally upon the old tow-path of the James river and Kanawha canal.

For the distance of three-fourths of a mile, including the point at which the accident happened, in a westerly direction, the river is on the right-hand side of the track; while on the

shore side there are a series of bluffs, with intervening ravines, rising abruptly from the water-line in some places to the height of 200 feet, along the base of which the road-bed has been cut, and the face of which forms its southern side or wall.

The property was transferred to the present company in the year 1887, and has been since that time operated by it. In its operation the defendant exercises control over these bluffs, and keeps a watchman continuously on the beat in question, whose duty it is to keep a lookout for rocks, trees and other obstructions likely to fall or wash upon the track, and remove them when practicable, or else flag approaching trains.

On Sunday, December 29, 1901, the regular west-bound passenger train having been delayed by an accident east of Lynchburg, the passengers and baggage were transferred to a special train, composed of an engine and tender, a combination baggage and express car, and a passenger coach. This special train left Lynchburg for Clifton Forge about six o'clock in the evening, two hours behind schedule time.

The watchman on the beat in question was returning from the western end of his course, and had proceeded about one-fourth of a mile eastward when he heard the train blow for Reusens, a station four miles west of Lynchburg, and two miles east of the scene of the accident, and stepped off the track to allow it to pass him. While thus waiting, he heard a rock fall on the track towards the eastern end of the bluff, and hurried forward waving his lantern across the track to stop the train.

The railroad approaches the bluff from the east on an 11° reverse curve, and at that point Fisher, in obedience to the rules of the company, reduced the speed of the train to "almost a stand-still," and came around the curve very slowly, but on clearing it he observed a white light ahead, and believing the track to be unobstructed increased his speed to fifteen miles an hour, which rate was maintained until the engine collided with a rock weighing about a ton, which had broken loose from the adjacent bluff and fallen upon the track between the rails.

The rock was wedge-shaped and the pilot "rode up on it" with all the wheels of the engine except the back drivers. An examination showed that the engine was not seriously damaged, but it was impossible to replace it on the track, and a messenger was dispatched to Reusens to telegraph to Lynchburg for assistance.

It had been raining continuously for several days, and the night was intensely dark. The passenger coach was crowded, and the trainmen and most of the male passengers assembled in the baggage and express car, where they remained for more than a half hour awaiting assistance, smoking and discussing the accident. At intervals, during that time, gravel and rock were falling from the bluff above, and it was suggested that it would be safer for the passenger coach to be pushed back from under the bluff. Accordingly, with the assistance of the passengers, the coach containing the women and children was shoved back some sixty-five feet. Thereupon the conductor requested the passengers to aid in removing the baggage and express car also; and while the express messenger was engaged in uncoupling the car for that purpose, a large quantity of rock and earth fell from the side of the bluff upon and against the car, casting several men into the river, and part of the mass falling upon Fisher and the express messenger, held them fast, despite the efforts of their companions to release them, until they were overwhelmed and killed by another mass of matter which shortly thereafter came down upon them.

The trial court sustained a demurrer to the evidence and rendered judgment for the defendant; and the plaintiff brings error.

The defendant denies liability for the death of plaintiff's intestate on the grounds, that the evidence fails to show actionable negligence on its part; and also, that it establishes such contributory negligence on the part of Fisher as would defeat a recovery, even if the initial negligence of the railroad company had been proved.

The relation of the parties being that of master and servant, the law imposed upon the defendant the duty of exercising ordinary care to provide for the safety of its servant while engaged in the discharge of his duties; and to that end required the use of ordinary care on the part of the company to furnish him a reasonably safe place in which to work.

Ordinary care is defined to be "such care as reasonable and prudent men use under like circumstances, in providing safe and suitable appliances and instrumentalities for the work to be done, and in providing generally for the safety of the servant in the course of his employment, regard being had to the work and difficulties and dangers attending it." *Bertha Zinc Co.* v. *Martin,* 93 Va. 804, 22 S. E. 869; *Richlands Iron Co.* v. *Elkins,* 90 Va. 261, 17 S. E. 890.

In the case of *Grand Trunk R. Co.* v. *Ives,* 144 U. S. 417, 418, 36 L. Ed. 485, 12 Sup. Ct. 679, it is said: "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in the case was such as would be expected, of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury." *B. & O. R. Co.* v. *Griffith,* 159 U. S. 603, 611, 40 L. Ed. 274, 16 Sup. Ct. 105.

In case of railroad companies, the duty involves proper construction of the road-bed and track, primarily; and also the correlative obligation of maintenance and inspection.

The principle is thus stated by the Supreme Court of the United States: "The railroad cut is as much a part of the railroad structure as is the fill. They are both necessary, and both are intended for one result, which is the production of a level track over which the trains may be propelled. The cut is made by the company no less than the fill, and the banks are not the result of natural causes, but of direct intervention of the company's work. If it be the duty of the company (as it unquestionably is), in the erection of the fills and the necessary bridges, to so construct them that they shall be reasonably safe, and to maintain them in a reasonably safe condition, no reason can be assigned why the duty should not exist in regard to the cuts. Just as surely as the laws of gravity will cause a heavy train to fall through a defective or rotten bridge to the destruction of life, just so surely will those same laws cause landslides and consequent dangerous obstructions to the track itself, from ill-constructed railway cuts. To all intents and purposes, a railway track which runs through a cut where the banks are so near and so steep that the usual laws of gravity will bring upon the track the debris created by the common processes of nature, is overhung by those banks. Ordinary skill would enable engineers to foresee the result, and ordinary prudence should lead the company to guard against it. To hold any other view would be to overbalance the priceless lives of the travelling public by a mere item of increased expense in the construction of railroads, and after all, an item, in the great number of cases, of no great moment." *Gleeson* v. *Va. Mid. Ry. Co.,* 140 U. S. 435, 440, 35 L. Ed. 458, 11 Sup. Ct. 859, 861.

It is not perceived that there can be any difference, in principle, between the duty of a railroad company with respect to the artificial banks of a cut, and natural banks and bluffs along the base of which it has chosen to locate its road. The mandate of the law which imposes upon companies the duty of using ordinary care to furnish the employee a reasonably safe place

in which to work, is as imperative in the one case as in the other; and this rule is founded upon the just, reasonable and humane principle that where human life is at stake, such precautions must be taken as will afford reasonable assurance of its preservation.

In the case of *Union Pacific R. Co.* v. *O'Brien,* 181 U. S. 452, 459, 40 L. Ed. 766, 16 Sup. Ct. 618, 620, Chief Justice Fuller, in delivering the opinion of the court, says: "This engineer was entitled to rely upon the company as having properly constructed the road, and to presume that it had made proper inquiry in respect to latent defects, if there were any, in the construction, for such was its duty, and he cannot be held to knowledge of the danger lurking in this narrow seam in the mountain side by whose inequalities its sinuosities were hidden. We agree with the Circuit Court of Appeals that the Circuit Court properly instructed the jury in this regard, and that no error was committed in allowing the jury to consider the evidence in the light of its own judgment and knowledge, taking into consideration all the facts bearing on the defective construction in question."

So also in the case of *Bean* v. *Western N. C. R. Co.* (N. C.), 12 S. E. 600, the court observes: "The mass of stone just above and near to the railroad track on which trains were moved, were in condition, as to situation, to slide or fall upon the track, were dangerous, were a standing menace, and were allowed to be so for several years, and the agents of the defendants knew the fact. The stone ought to have been removed when the road was constructed. The fact that the defendant kept a "track walker" whose duty was to examine and see just after a train had passed the dangerous point, whether rock had fallen or was about to fall, cannot excuse the defendant. It was its serious duty to avert such dangers because it was obvious, could be seen, and ought to have been removed. It is not sufficient to be simply cautionary, when a manifest danger exists that may and ought to be removed." See also *Elledge* v. *Nat'l. City, &c., R. Co.* (Cal.), 34 Pac. 720, 38 Am. St. 290.

VOL. CIV—81

In our view it is unnecessary, in either aspect of the case, to enter upon a circumstantial discussion of the evidence.

Upon the first proposition, involving the question of the defendant's negligence, considered from the standpoint of a demurrer to the evidence, there is no escape from the conclusion that the evidence strongly tended to establish it. It was in testimony that the bluff, at the point of the accident, appeared to be, *and was believed to be*, in an unsafe condition; that it was not solid but seamed; and that there was a dry crack across the face of it, through which loose earth had exuded, which circumstance, in the opinion of some of the witnesses, indicated the presence of an earth pocket behind the surface of the rock. These conditions were discernible from the track beneath, and had been long known to the defendant's watchmen and supervisors of track. Yet the defendant had wholly failed to make it the object of special inspection, or test its stability by scaling or otherwise. In this state of the case, the trial court was not warranted in declaring, as matter of law, that the allegation of negligence on the part of the defendant had not been sustained. On the contrary, it is the settled doctrine of this court, that, under such circumstances, the question of negligence is one for the determination of the jury.

Thus in the case of *Kimball & Fink* v. *Friend,* 95 Va. 125, 140, 27 S. E. 901, 904, the court said: "The question of negligence in such a case is peculiarly one for the consideration of the jury. In *Carrington* v. *Ficklin,* 32 Gratt. 670, 676-7, the court, Jurge Burks delivering the opinion, said: 'Where the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inferences to be drawn from the evidence must be either certain and incontrovertible, or they cannot be decided by the court. Negligence cannot be

conclusively established by a state of facts upon which fair-minded men may well differ.' " *Richmond & D. R. Co.* v. *Medley*, 75 Va. 499, 505, 40 Am. Rep. 734; *Winchester* v. *Carroll*, 99 Va. 727, 744, 40 S. E. 37.

On the issue raised by the defendant's second ground of defense, that plaintiff's intestate was guilty of contributory negligence, there was also a conflict of evidence. The witnesses were not agreed as to the character and size of the particles of gravel and rock, which, at intervals, fell from the bluff before the fatal slide occurred. It was conceded that the darkness of the night was so intense that it was impossible to discover the true condition of the face of the bluff, and the impression made on one of the witnesses was (to quote his own language), "that when the first small slide occurred, it left a ragged place; and the downfall of rain was washing down the gravel and dirt that had been torn up by the other rock in its passage down the cliff." The fact that practically all the adult male passengers, some fifteen in number and of various occupations, volunteered, after the passenger coach had been pushed back from under the cliff, to assist the crew in removing the combination car, is convincing evidence of the fact that Fisher, in remaining at his post of duty, to say the least of it, was not guilty of negligence *per se*. Their collective opinion, as evidenced by their conduct, refutes that contention. Therefore, the question of his alleged contributory negligence was for the jury and not for the court.

In *Bass* v. *Norfolk Ry., &c., Co.,* 100 Va. 1, 8, 40 S. E. 100, 102, it was held: "Whether or not the plaintiff's intestate, under all the facts and circumstances of this case was guilty of contributory negligence is a question about which reasonably fair-minded men might differ. The inferences to be drawn from the evidence must be certain and incontrovertible, or they cannot be decided by the court."

"It was, therefore, a question for the jury. And since the

jury might have found for the plaintiff on the question of con-
tributory negligence of the plaintiff's intestate, on the defend-
ant's demurrer to the evidence, the court must so find." See
also *Wood's Adm'x.* v. *Southern Ry. Co., post* p. 650.

For these reasons we are of opinion that the judgment com-
plained of is erroneous and must be reversed; and this court,
proceeding to render such judgment as the Circuit Court ought
to have rendered, will overrule the demurrer to the evidence,
and enter judgment for the plaintiff in error for the damages
awarded by the jury.

*Reversed.*