Syllabus.

# Richmond.

BLACK'S ADMINISTRATOR V. VIRGINIA PORTLAND CEMENT CO.

November 22, 1906.

Absent, Buchanan, J.

1. MASTER AND SERVANT—*Safe Place—Inspection—Case at Bar.*—It is
the duty of the master to exercise ordinary care to keep the place
in which his servant is placed to work in a reasonably safe con-
dition, and to that end to make such inspection, from time to
time, as will keep him informed of the condition of the premises.
He is chargeable with knowledge of the facts which such inspec-
tion would have disclosed, and if the neglect thereof is the proxi-
mate cause of an injury to a servant who is himself free from
fault the master is liable. In the case at bar a servant was
killed by a rock falling on him in a stone quarry. The danger
was not open and obvious, and was not due to the changing con-
dition of the quarry incident to operating it. The servant was
not negligent, and the proximate cause of his death was the
negligence of the master in failing to discover and remove the
loose stone which fell upon and killed him, which negligence is
sufficiently charged in the declaration.

2. MASTER AND SERVANT—*Non-assignable Duties—Fellow-Servant—
Boss.*—A "walking boss" whose duty it is to see that a quarry is
kept in a reasonably safe condition, is not, in discharge of this
duty, a fellow-servant of a workman in the quarry. This duty
is one of the non-assignable duties of the master.

3. MASTER AND SERVANT—*Negligence—Questions for Jury.*—Whether or
not a master has discharged his duty of exercising ordinary care
to maintain a reasonably safe place in which his servant is to
work, and if not whether his neglect is the proximate cause of an
injury to his servant, and whether the servant has been guilty
of contributory negligence, are questions for the jury, whose ver-
dict will not be disturbed unless plainly wrong.

4. VERDICTS—*Weight—New Trial.*—The verdict of a jury is entitled to
great respect, and should not be disturbed even by the trial
court unless plainly against the weight of the evidence; and,
while greater latitude is allowed a trial judge in granting than

in refusing a new trial, yet if reasonable men may fairly differ as to the inferences to be drawn from the facts, the verdict should not be disturbed.

Error to a judgment of the Circuit Court of Augusta county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The evidence sufficiently appears in the opinion of the Court. The instructions given by the trial court, and referred to in the following opinion, are as follows:

### *Instructions Given for Plaintiff.*

"1. The court instructs the jury that the law presumes that George H. Black exercised due and proper care on his part at the time he was injured, and the burden of proving that he was negligent is upon the defendant, unless such neglect appears from the plaintiff's evidence.

"2. The court instructs the jury that the duty of the master to inspect its premises where its servants are employed, and to exercise reasonable care for their safety, is affirmative, and must be continuously fulfilled and positively performed; and if the master neglects this positive duty, and his servant is injured as a proximate result of such neglect, the master is liable in damages (but the character of the supervision must vary with the nature of the employment, nor is the defendant liable, if contributory negligence was the proximate cause of the accident).

"3. The court instructs the jury that if they believe from the evidence that the work at which Black was employed was of particularly dangerous character, then it became the duty of the defendant company to use care and skill commensurate with the danger of the employment of the said Black (but if they believe that the work was of an extra hazardous character, then Black assumed all risks incident thereto).

"4. The court instructs the jury that a master is charged with notice not only of what he or his representative knew, but also of what he or his representative ought to have known by the exercise of reasonable care on their part to inspect and examine; and where there is a danger that the master or his representative ought to have known of, by the exercise of reasonable care, and his servant is injured or killed by this danger, that the master ought to have known of, if he or his representative had done his duty, then the master is liable in damages, if the neglect of the master to find out and remove or guard against the danger was the proximate cause of the servant's injury or death (but if the accident arose from the changing and shifting condition of the quarry, resulting from its operations, of which the master was not informed and which he could not reasonably be expected to have known, or if it was the result of an open and obvious danger of which plaintiff's decedent had knowledge, or could have known in the exercise of ordinary care).

"5. The court instructs the jury that a servant is, as a general rule, excusable for obeying orders in and about his master's business when such orders are given by the master or by one in authority over the servant, as the representative of the master, unless the danger to be incurred by such obedience is so plain and manifest that no prudent person would attempt obedience, even under orders from one having authority over him, and though there be apparent danger in obeying the master's orders, yet such knowledge on the part of the servant will not defeat a recovery if the danger is not glaring and such as threatens immediate injury.

"6. The court instructs the jury that if they believe from the evidence in this case that W. S. Hunter was employed by the defendant company as its walking boss in the defendant's quarry, and that George H. Black, the deceased, was the powder man of the defendant company and subject to the orders of the

said walking boss Hunter, and that it was the duty of the said Hunter to inspect and to keep the quarry of the defendant company in a condition as safe as could be reasonably expected from the nature of the work, and if they believe from the evidence that the said walking boss Hunter directed the deceased, George H. Black, to do work under the rock that fell and caused his death while carrying out the orders of the said Hunter, and if they further believe that the said Hunter, by the exercise of reasonable care, could have ascertained the danger from this rock and have guarded against it, and that the failure of Hunter to do this was the proximate cause of the death of the said George H. Black, then the defendant company is liable in damages, if they believe that the danger of the place from this rock was not so glaring that a reasonably prudent man would have risked it, acting under the orders from his superior, as Black was.

"7. The court instructs the jury that if they believe from the evidence in this case that it was the duty of W. S. Hunter, the walking boss, to inspect and to keep the quarry of the defendant company in a condition as safe as could reasonably be expected, from its character, and if they believe from the evidence that he directed the defendant, George H. Black, to do work under the rock that fell and caused his death while carrying out the order of the said Hunter, then the defendant company is liable, if the jury believe from the evidence that the said Hunter knew or could have known, by the exercise of reasonable care, of the danger from the rock that did the mischief, and that the danger of the place from this rock was not so glaring that a reasonably prudent man would not have risked it under the orders from his superior or master.

"8. The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover, that then in ascertaining and fixing the damages in this case they should fix the same with reference to—

"First. To the loss sustained by Sylvia Black, the widow of George H. Black, deceased, by the death of her husband, George H. Black, fixing the same at such sum as would be equal to the probable earnings of the said George H. Black, taking into consideration the age, business capacity, experience, habits, energy and perseverance of the deceased during the lifetime of the said Sylvia Black, if he had not been killed.

"Second. By adding thereto compensation for the loss of his care, attention and association to his wife.

"Third. By adding such further sum as they may deem fair and just, by way of solace and comfort to his said widow for the sorrow and suffering and mental anguish, caused to her by his death.

### *Instructions Given for Defendant.*

"1. The court instructs the jury that the burden of proving his case is upon the plaintiff, and that he must prove it by a preponderance of the evidence in order to entitle him to recover.

"2. The court instructs the jury that if they shall believe from the evidence that the accident in this case arose from the changing and shifting conditions of the quarry, resulting from its operation, of which the master was not informed and which he could not be reasonably expected to know, then there is no liability upon the defendant company, and the jury must find for the defendant; but if, under all the circumstances of the case, the defendant company, acting through its boss, knew or could have known by ordinary care of the dangerous character of the work to be performed, and directed the decedent to perform it, then the company is liable, unless the danger was so open and obvious as to amount to contributory negligence.

"3. The court instructs the jury that if they shall believe from the evidence that the plaintiff's intestate, George H. Black, knew that the rock which killed him was a dangerous one and liable to fall, or if in the exercise of ordinary care he might

have known this, then the defendant company is not liable, and the jury must find for the defendant.

"4. The court instructs the jury that the duty owed by an employer to his employee, where the place of work is constantly changing and is not permanent, is not such a duty as is owed by an employer to his employee where the place of employment is a permanent place of work with unchanging conditions; and if they believe from the evidence that the quarry in question was a place in which surrounding conditions were constantly changing and the furnishing and preparation of which was itself a part of the work which the servant was employed to perform, the defendant company's duty was to use only ordinary care for the safety of its employees in the performance of their employment, considering the dangerous character of the work, but did owe such reasonable care and precaution as the character of the work permitted. Whether or not they were taken is a question of fact for the jury. If they were not taken the company is liable; but if the jury shall further believe from the evidence that the defendant company did use such ordinary care, then the defendant company is not liable, and the jury must so find.

"5. The court instructs the jury that where a person voluntarily enters the service of another, he assumes all the risk usually incident to such employment, and is presumed to have contracted with respect thereto; and the jury are instructed that George H. Black, the plaintiff's intestate, in entering the service of the defendant company, assumed all the risks of danger incident to his employment in connection with the quarry, whether said risks arose from the shifting and changing character of the place or from any other cause.

"6. The court instructs the jury that an employee who knows the unsafe or dangerous condition of the place in which he is working, or by the exercise of ordinary care might know, is not compelled to continue the work; but if he does continue it, then he must be held to have assumed not only the risks ordinarily

incident to the service when he entered upon it, but such as became known to him during the progress of the work, or which might have been ascertained by him in the exercise of ordinary care.

"7. The court instructs the jury that if they shall believe from the evidence that the plaintiff's intestate, George H. Black, had the same knowledge of the condition of the quarry at the point at which the accident happened, or the same means of knowing as was possessed by the defendant company, and failed to exercise proper care for his own safety or to inform the defendant of the condition of the quarry, then the jury must find for the defendant, even though they may believe from the evidence that the said defendant company was guilty of negligence.

"9. If the jury believe from the evidence that the plaintiff's intestate, George H. Black, was instructed by the defendant company to remove all loose rock on the face of the quarry at the point where the accident happened in order that the quarry might be made safe for the employees to work in, it became and was his duty to carefully examine the face of the quarry at the point at which he was working in order to locate any rock that might be in an unsafe condition, and to remove the same when so located; but if they further believe from the evidence that the defendant company's boss was in authority over the plaintiff's decedent, and instructed him to do the work in the doing of which the accident occurred, then the defendant company is liable, if it could have ascertained by a reasonable and proper inspection through its boss of the impending danger in the overhanging rock, unless the dangerous character of the rock was open and obvious.

"10. The court instructs the jury that while ordinarily it is the duty of the employer to furnish a reasonably safe place, and proper and suitable appliances and machinery for the employee, and to keep the same in a reasonably safe, proper and suitable condition, this rule is not applicable to a place, the furnishing

and preparation of which is in itself a part of the work which the employee has to perform; but while it is the duty of the employer under such circumstances to commit the work to careful and skillful bosses and superintendents and to furnish suitable appliances, if the jury shall believe from the evidence that the quarry in question was a place in which surrounding conditions were constantly changing, the furnishing and preparation of which was in itself a part of the work which the plaintiff's intestate, George H. Black, was employed to perform, and that the defendant company committed the work to careful and skillful bosses and superintendents, who properly discharged the duties that devolved upon them, and furnished suitable appliances, then the defendant company is not liable and the plaintiff cannot recover."

*Charles Curry, Hurst Glenn, H. H. Wayt* and *Carter Braxton,* for the plaintiff in error.

*Patrick & Gordon,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

This is the sequel to the case of *Black's Administrator* v. *Virginia Portland Cement Company,* 104 Va. 450, 51 S. E. 831. When the case was here on the former occasion this court reversed the judgment of the Circuit Court on the demurrer to the declaration, and remanded the cause for trial. At the trial the verdict of the jury was for the plaintiff, assessing his damages at $1,386; and at the following term of the court this verdict was set aside and a new trial awarded the defendant company. The second trial resulted in a verdict for the plaintiff, assessing his damages at $1,248.18, which the Circuit Court also set aside, and at the third trial the verdict was for the defendant company, which verdict the court refused to set aside on the motion of the plaintiff. All the evidence adduced

upon the first trial is now before this court, having been duly incorporated in a bill of exception taken at the time, signed by the presiding judge and made a part of the record.

The first inquiry by this court is: Whether the Circuit Court erred in granting a new trial and in not rendering judgment according to the first verdict.

· The defendant company was the owner and operator of a large rock quarry near its cement works in Augusta county, from which the rock was taken that was manufactured into the products of the works. The quarry was in the side of a hill, and about one hundred feet high, composed of different ledges. It sloped back from the bottom, and about thirty or forty feet from the bottom there was a cave, the top of which was apparently solid rock. Near the mouth of this cave and below it was a ledge, and the top of the cave overhung this ledge. The method of operating the quarry was to drill holes in the rock, fill them with dynamite and explode them. All the rock that is loosened by the blast, but not thrown down, must be gotten down either by prizing it off with a crowbar, or by throwing it off with charges of dynamite inserted in the cracks. Plaintiff's intestate, between forty-five and fifty years of age, had been in the employ of the defendant company for some time, perhaps since the quarry was opened. His employment at the time of the accident out of which this suit arose was to load and set off blasts, or, as said by a witness for the defendant company (W. S. Hunter), a foreman and walking boss in its quarry, "His duties were as powder man, loading the holes." In the quarry about one hundred hands were employed, and a great deal of blasting done, the quarry being made by cutting down a very high and precipitous bluff on the northwest side of the Little Cowpasture river, the height of which, as stated, was about one hundred feet. Black, the decedent, was assisted by another negro, named John Parks. No work had been done in that part of the quarry where this accident occurred for some little time before the day on which it happened. On the day before

the accident Hunter went to this point to clear away the loose rock, in order that the quarry might be made safe for the men to work below, but he makes no claim to having overlooked the quarry above the place of the accident with the view of making this place safe.  In order to ascertain whether or not it was safe for the men to work at the point where Black received his injuries it was necessary, according to the uncontradicted evidence, that the quarry be looked over and examined above that point, which had not been done.  Hunter only claims that he looked the face of the quarry over and saw a good many loose stones on the ledge below the cave that had to be removed, but there was nothing to indicate that there was anything the matter with the roof of the cave.  Unless care was taken to examine and inspect the wall of the quarry after blasting had been done, rocks were liable to fall down on the hands at work below and kill or injure them; and the defendant company recognizing this danger had employed special men to swing around on ropes to ascertain whether or not there were such impending dangers, and to clear out the loose rock.  Hunter testifies that it was his duty to inspect, and that of one Knowles to go along with ropes to swing around over the walls to see that loose stone was removed.  These precautions, for some cause, had not been taken for some days at least prior to this accident, and Hunter, the walking boss, himself had assumed the entire duty of inspecting the quarry and of making it safe, as he himself testifies.  Black, as powder man, had to load and fire from one hundred and fifty to one hundred and sixty holes a day, and some of them very large holes.

About three or four days before the accident to Black a ledge under the dolomite ledge had been shattered with blasts, being the lower ledge next to the base, and Parks and Hunter had been clearing out some of this the day before with crowbars, and some blasts had been put in by Black, some of them to throw off big stones.  Black and Parks were directed by Hunter, the walking boss, to go under this dolomite ledge the next day, at

the mouth of the cave, and do further blasting.   They went there about eleven o'clock for that purpose, and from where they were under this ledge at the mouth of the cave there was no apparent danger from the ledge above.   There was no crack in the ledge above them which they could see.   It had not been shattered by the blasts in the ledge below, and the formation above their heads from which the rock fell that killed Black, according to the statement of Hunter, looked just "as the old Master made it."   The rock which fell and killed Black was about four feet wide, about eight feet long and about eight inches thick, and at the place from which it fell (the roof of the cave) it slanted upward and ran out to a "feather edge." After this rock had fallen it was perfectly apparent that it had been loose for some time, and that there was a water seam around it, which was seen by other employees working in the quarry at a place removed from the place at which Black and Parks were put to work that morning.   Hunter states that it could have been seen by going up on the dolomite ledge, but not from where Black and Parks were at work.   It was, according to all the evidence, the special duty of Hunter to keep the quarry in a safe condition, and to that end to inspect it.   He says himself:   "I never inspected the natural roof (that is, where the impending rock was located).   I never supposed that would be dangerous."   Yet, without examination as to the condition of the quarry above where he was at work, Black was directed to go under the impending rock to work.   Hunter only claims that he looked from below to see what stone was to be removed, and also looked when he went to the place at which Black and Parks were directed to work, and that neither from below nor from the ledge on which the work was being done could the condition of the stone which fell be discovered.   This admission removes all room for contention that the danger to Black was open and obvious or might have been discovered by the exercise of ordinary care for his own safety, and was therefore one of the assumed risks incident to his employment.   Nor

can it be maintained that the dangerous condition of the place at which Black was put to work and where he met his death was due to the changing and shifting conditions of the quarry, brought about in operating it.

There is no evidence in the record sustaining the contention of the defendant company that Black was guilty of contributory negligence. In *Black's Admr.* v. *Va. Portland Cement Co., supra,* the opinion says:. "The declaration before us states that the plaintiff's intestate was in the employment of the cement company, engaged in quarrying rock; that the defendant company, whose duty it was to keep its quarry in a reasonably safe condition, knowingly permitted a stone to remain in a position from which it was liable to fall at any time, and, in fact, it did fall on the day stated upon George H. Black, he being ignorant of the danger and in the exercise of due and proper care and caution, by reason of which he received injuries which resulted in his death.  It would seem beyond dispute that this state of facts disclosed actionable negligence upon the part of the defendant in error.  Every fact here stated is upon demurrer to be taken as true—that the rock which inflicted the injury was in a position from which it was liable to fall; that the master knew this fact, and negligently permitted it to remain; and that the servant, ignorant of the situation, remained at work in the quarry in the due course of his employment, and, while in the performance of his duty, received the fatal injury. If these facts be established a case of negligence is made out which entitles the plaintiff in error to a recovery." In the preceding portion of the opinion, after referring to authorities for the rule as to what risks a workman or servant impliedly agrees to assume upon entering the master's employment, and as to what constitutes negligence in a legal sense, it is said:  "Any failure upon the part of the master to observe for the protection of his servant that reasonable degree of care which the circumstances of the particular case justly demand is actionable negligence, and is not within the influence of assumed risks."

Proof that the master, in the discharge of his duty to keep the place where his servant is required to work in a reasonably safe condition, could have by the exercise of reasonable or ordinary care ascertained that the place was not reasonably safe is proof of knowledge on his part that it was not safe. This is too well settled to require the citation of authority. In fact, it is elementary law. It is, however, earnestly contended by the learned counsel for the defendant company that the proof in the case does not sustain the allegation in the declaration that the defendant company knew of the dangerous condition of the place where Black was put to work and killed, and that there is no proof that would have justified the jury in finding that the defendant company ought to have known that fact, except the proof that the company had failed to make proper inspection of its quarry just prior to the injuries to Black, and that this proof should have been stricken out by the Circuit Court on the motion made by the defendant company, upon the ground that there was no allegation in the declaration under which such evidence could be offered or admitted; therefore, that the verdict of the jury was rightly set aside.

The gravamen of the declaration is that it was the duty of the defendant company to keep and maintain its quarry in a reasonably safe condition, and that it neglected this duty, etc. The defendant company, protesting its ignorance of the basic fact alleged in the declaration, the plaintiff might have proved, if he could, directly, that the defendant company had knowledge of this fact, and if it could not be so proved there was but one other way to prove it, and that was by proving that by the exercise of reasonable or ordinary care it could have known it. Inspection is but a means to an end, and we think that it was entirely admissible under the declaration charging the neglect of the admitted duty of the defendant company to keep its quarry in a reasonably safe condition, the neglect of which duty was the proximate cause of Black's death, to prove that the defendant company could have ascertained the danger to which

he was subjected by regularly inspecting its quarry and clearing away dangerous stones therefrom, as it had theretofore done, but had abandoned, leaving that duty upon Hunter, its walking boss, alone, and which duty he confessedly neglected. There was no way by which the defendant company could continuously keep its quarry in a reasonably safe condition without looking and seeing whether or not it was safe—without employing some person or persons to do this work of inspection. The quarry was in an unsafe condition confessedly. The circumstances were such as not to put any responsibility for its unsafe condition upon Black.

"The master is chargeable, not only with such knowledge as he actually has, but also with that which he ought to have by the exercise of reasonable care and diligence on his part in the performance of his duties as master." I Labatt on Master & Servant, section 125; *Fisher* v. *C. & O. Ry. Co.*, 104 Va. 635, 52 S. E. 373, 2 L. R. A. (N. S.) 954; *Norfolk & W. Ry. Co.* v. *Coffey,* 104 Va. 665, 51 S. E. 729, 52 S. E. 367, 3 L. R. A. (N. S.) 111.

In the last-named case the injury to Coffey was sustained by reason of the falling of a stone upon him while at work in a rock quarry, and the railroad company was held responsible therefor because of its negligence in not keeping its quarry in a reasonably safe condition.

In *Russell Creek C. Co.* v. *Wells,* 96 Va. 424, 31 S. E. 614, relied on for the defendant company, the company avoided a recovery for the injuries to Wells by it appearing in proof that the company had properly inspected its mines a short while before the accident to Wells, and that the accident arose from the changing and shifting condition of the mine resulting from its operation, the mine being in the first instance in a reasonably safe condition; and that it was as much the duty of Wells as the mine boss to guard against the danger brought about by the changed conditions, it thus becoming one of the risks assumed by his employment; but that is by no means the case here.

The duty of the defendant company to keep its quarry in a reasonably safe condition devolved upon Hunter, as the evidence clearly shows.  In the discharge of this duty Hunter was not a fellow-servant of Black.  "A 'mine boss' is not a fellow-servant of members of his gang under all circumstances. Though he is such fellow-servant while discharging duties affecting the mere administration of the work to be done, he is not a fellow-servant when discharging the non-assignable duties of the master. *Russell Creek C. Co.* v. *Wells, supra.*

The evidence in the record that might be considered as tending to prove that the defendant company did not employ competent servants is of so little importance that it could not, as it appears to us, have influenced the jury in any degree in finding the verdict they rendered.

The court gave for the plaintiff eight instructions to the jury, to all of which the defendant company excepted, and all of the ten instructions asked by the defendant company were given as asked, except the eighth, which was refused, and the second, fourth, ninth and tenth, which were modified, and as modified given.  With reference to these numerous instructions we deem it only necessary to say that we are of opinion that they fairly submitted the case to the jury upon the evidence, and propounded the principles of law applicable thereto as favorably to the defendant company as it could have reasonably asked.

It was for the jury to say whether or not the defendant company could have, by the exercise of reasonable or ordinary care, known of the danger to which Black was subjected at the time and place when and where he met his death, and to find, if it could have known of the danger by such care, that then it knew of the danger.  It was for the jury to determine whether or not the negligence of the defendant company was the proximate cause of Black's death, and whether or not he was guilty of contributory negligence.  Upon all of these questions, fairly submitted to them, the jury found for the plaintiff.

"The verdict of the jury is entitled to great respect, and it

should not be disturbed even by the trial court unless plainly against the weight of the evidence; and, while greater latitude is allowed the trial judge in granting than in refusing new trials, yet if reasonable men may fairly differ as to the inferences to be drawn from the facts, the verdict should not be disturbed." *Marshall* v. *Valley R. Co.,* 97 Va. 653, 34 S. E. 455, and authorities cited.

In the statement of the case above we have adverted to the evidence sufficiently, we think, to render it unnecessary to review it at greater length. We are of opinion that the judgment of the Circuit Court setting aside the first verdict should be reversed, the subsequent proceedings annulled and judgment rendered for the plaintiff on the first verdict as the Circuit Court ought to have done.

*Reversed.*